# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Corbin R. Davis

HANNAY v DEPARTMENT OF TRANSPORTATION
HUNTER v SISCO

Docket Nos. 146763 and 147335. Argued October 8, 2014 (Calendar Nos. 3 and 7). Decided December 19, 2014.

Heather L. Hannay brought an action in the Court of Claims against the Department of Transportation (MDOT), seeking damages for injuries she suffered when a salt truck driven by one of MDOT's employees ran a stop sign and struck her car. After a bench trial, the court, Rosemarie E. Aquilina, J., awarded Hannay $474,904 in noneconomic damages, $767,076 for work-loss benefits, and $153,872 in expenses for ordinary and necessary services. MDOT appealed, and Hannay cross-appealed. The Court of Appeals, HOEKSTRA, P.J., and K. F. KELLY and BECKERING, JJ., affirmed. 299 Mich App 261 (2013). The Supreme Court granted MDOT's application for leave to appeal in order to consider whether economic loss in the form of wage loss may qualify as a bodily injury under the motor vehicle exception to governmental immunity and whether Hannay incurred a loss of income from work that she would have performed as opposed to a loss of earning capacity. 495 Mich 863 (2013).

Harold Hunter, Jr., brought an action in the Genesee Circuit Court against David Sisco, Auto Club Insurance Association, and the city of Flint Transportation Department (Flint), seeking damages for injuries suffered when a dump truck owned by Flint and driven by Sisco sideswiped Hunter's vehicle. Flint moved for summary disposition. The court, Joseph J. Farah, J., denied the motion. Flint appealed. The Court of Appeals, SAWYER, P.J., and SAAD and METER, JJ., reversed in part, holding that Hunter could not recover noneconomic damages for pain, suffering, shock, or emotional damage. 300 Mich App 229 (2013). The Court of Appeals denied Hunter's motion for reconsideration. Hunter sought leave to appeal and Flint sought leave to cross-appeal. The Supreme Court denied both applications. 495 Mich 898 (2013). Hunter moved for reconsideration. The Supreme Court granted the motion, vacating that part of its previous order denying Hunter's application for leave to appeal and granting leave to appeal to consider whether damages for pain and suffering, emotional distress, or both may qualify as a bodily injury under the motor vehicle exception to governmental immunity. 495 Mich 960 (2014).

In an opinion by Justice ZAHRA, joined by Chief Justice YOUNG and Justices MARKMAN, KELLY, McCORMACK, and VIVIANO, the Supreme Court held:

The phrase "liable for bodily injury" contained in the motor vehicle exception to governmental immunity, MCL 691.1405, means legally responsible for damages flowing from a

physical or corporeal injury to the body. The restrictions on damages recoverable in third-party tort actions involving motor vehicle accidents set forth in MCL 500.3135 of the no-fault act apply to cases permitted by the waiver of governmental immunity provided for in the motor vehicle exception. A plaintiff, therefore, may bring a third-party tort action for economic damages, such as work-loss damages, and noneconomic damages, such as pain and suffering or emotional distress damages, against a governmental entity if the requirements of MCL 500.3135 have been met.

1. The Governmental Tort Liability Act (GTLA), MCL 691.1401 *et seq.*, limits the exposure of the state, its agencies, and its political subdivisions to tort liability. The GTLA provides six exceptions to its broad grant of governmental immunity, including the motor vehicle exception, which states that governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner. To be "liable" means to be legally responsible. "Bodily injury" means a physical or corporeal injury to the body. Accordingly, the phrase "liable for bodily injury" means legally responsible for a physical or corporeal injury to the body. In order to prevail in a negligence action, in addition to the traditional elements—duty, breach, causation, and damages—a plaintiff must also demonstrate an actual injury to person or property. Therefore, "liable for bodily injury" in this context means legally responsible for damages flowing from a physical or corporeal injury to the body. In other words, "bodily injury" is the category of harm for which the government waives immunity under the motor vehicle exception, and tort damages naturally flowing from that injury are compensable. It is a longstanding principle that tort damages generally include damages for all the legal and natural consequences of the injury, including damages for loss of the ability to work and earn money, as well as pain and suffering and mental and emotional distress damages. Therefore, a plaintiff who suffers a bodily injury may recover under the motor vehicle exception tort damages that naturally flow from the injury, including economic and noneconomic damages. Bodily injury is not, however, a threshold requirement that opens all doors of potential liability. Accordingly, a plaintiff cannot seek damages for a bodily injury when the requested damages resulted from the bodily injury of another.

2. The no-fault act, MCL 500.3101 *et seq.*, generally abrogates tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle unless the damages fall under an enumerated exception. To the extent that the no-fault act narrows the damages available in a third-party tort action, those restrictions apply when the tortfeasor is a governmental entity. MCL 500.3135(1), (2), and (3)(b) allow third-party tort actions for noneconomic damages if the death, serious impairment of body function, or permanent serious disfigurement threshold is met, while MCL 500.3135(3)(c) allows third-party tort actions for certain kinds of economic damages, specifically damages for allowable expenses, work loss, and survivor's loss in excess of the daily, monthly, and 3-year limitations contained in the sections applicable to those three types of no-fault benefits. Therefore, a plaintiff may bring a third-party tort action for economic damages, such as work-loss damages, and noneconomic damages, such as pain and suffering or emotional distress damages, against a governmental entity if the requirements of MCL 500.3135 have been met.

3.  While work-loss damages are compensable under the no-fault act, loss-of-earning-capacity damages are not.  MCL 500.3135(3)(c) allows third-party tort actions seeking damages for allowable expenses, work loss, and survivor's loss in excess of the daily, monthly, and three-year limitations contained in those sections.  In the context of no-fault benefits, work loss consists of the loss of income from work an injured person would have performed during the first three years after the date of the accident if he or she had not been injured.  Work-loss damages are only available if the accident was the "but for" cause, i.e., the cause in fact, of the work loss.  Put differently, work-loss damages compensate a plaintiff for wages that he or she would have earned in light of the specific facts of the case.  Work-loss benefits are not restricted to a claimant's wage at the time of the accident, but prior wages generally are the most relevant and reliable evidence for determining what a plaintiff would have earned had the accident not occurred.  The trial court found that but for the accident Hannay would have been accepted into a dental-hygienist program, would have graduated, and would have been employed at least 60% of the time, by the specific dental office where she was already working, at a rate of $28 an hour.  The trial court erred by awarding Hannay work-loss damages as a dental hygienist because Hannay did not establish by a preponderance of the evidence that she would have earned wages as a dental hygienist if not for the accident.  The number of conditions that had to be satisfied before Hannay could have been employed as a dental hygienist indicated that this case involved more than the inherent uncertainty of work-loss claims in general, rendering the award impermissibly contingent and speculative.

In *Hannay*, Docket No. 146763, that portion of the decision of the Court of Appeals allowing recovery against a governmental entity of economic damages exceeding the statutory maximum affirmed; that portion of the decision of the Court of Appeals affirming the trial court's work-loss damages award reversed; case remanded to the trial court for recalculation of the work-loss award.

In *Hunter*, Docket No. 147335, the Court of Appeals' conclusion that noneconomic damages are not compensable under the motor vehicle exception reversed; case remanded to the trial court for further proceedings.

Justice CAVANAGH concurred in the result only.

©2014 State of Michigan

# Opinion

Chief Justice:     Justices:
Robert P. Young, Jr.   Michael F. Cavanagh
     Stephen J. Markman
     Mary Beth Kelly
     Brian K. Zahra
     Bridget M. McCormack
     David F. Viviano

FILED DECEMBER 19, 2014

STATE OF MICHIGAN

SUPREME COURT

HEATHER LYNN HANNAY,

     Plaintiff-Appellee,

v          No. 146763

DEPARTMENT OF TRANSPORTATION,

     Defendant-Appellant.

_____

HAROLD HUNTER, JR.,

     Plaintiff-Appellant,

v          No. 147335

DAVID SISCO and AUTO CLUB
INSURANCE ASSOCIATION,

     Defendants,

and

CITY OF FLINT TRANSPORTATION
DEPARTMENT,

     Defendant-Appellee.

_____

BEFORE THE ENTIRE BENCH

ZAHRA, J.

In these cases, we are called upon to interpret a provision of the Governmental Tort Liability Act (GTLA), MCL 691.1401 *et seq.*, commonly referred to as the motor vehicle exception to governmental immunity, MCL 691.1405. The statute provides, in relevant part, that "[g]overnmental agencies shall be liable for bodily injury . . . resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ."[1] Specifically, we must address whether the phrase "liable for bodily injury" allows for recovery of economic damages, such as work-loss damages, and noneconomic damages, such as pain and suffering or emotional distress damages. The Court of Appeals in *Hannay v Dep't of Transp* concluded that economic damages are compensable under the motor vehicle exception,[2] while the Court of Appeals in *Hunter v Sisco* concluded that noneconomic damages are not compensable under this exception.[3]

We conclude that the phrase "liable for bodily injury" contained in the motor vehicle exception means legally responsible for damages flowing from a physical or corporeal injury to the body. More simply, "bodily injury" is merely the category of harm for which governmental immunity from tort liability is waived under MCL 691.1405 and for which damages that naturally flow are compensable. Moreover,

---

[1] MCL 691.1405.

[2] *Hannay v Dep't of Transp*, 299 Mich App 261; 829 NW2d 883 (2013).

[3] *Hunter v Sisco*, 300 Mich App 299; 832 NW2d 753 (2013).

2

the restrictions on damages recoverable in third-party tort actions involving motor vehicle accidents set forth in MCL 500.3135 of the no-fault act, MCL 500.3101 *et seq.*, apply to cases permitted by the waiver of governmental immunity provided for in the motor vehicle exception. We therefore hold that a plaintiff may bring a third-party tort action for economic damages, such as work-loss damages, and noneconomic damages, such as pain and suffering or emotional distress damages, against a governmental entity if the requirements of MCL 500.3135 have been met.

Because we conclude that work-loss damages are compensable under the motor vehicle exception, we must also address a second issue presented in *Hannay*: whether the facts as found were sufficient to satisfy the statutory language defining work-loss damages with respect to plaintiff's claim of work loss as a dental hygienist. Plaintiff, a 22-year-old employed in a dental office, aspired to be a dental hygienist.[4] Plaintiff had previously applied for admission to a dental hygienist program at Lansing Community College (LCC), but she was not admitted to the program. Plaintiff intended to enhance her application and reapply to the program, but she had not been accepted at the time of her injury. Her employer and his wife, a hygienist in his office, testified that plaintiff would have gained admission to the program and that they would have employed plaintiff as a hygienist after she completed her education and obtained her license. Notwithstanding this testimony, we conclude that it is simply too tenuous a proposition to conclude that the work-loss damages in dispute were a legal and natural consequence of

---

[4] At the time of her accident, plaintiff was working part time as a dental assistant and part time as a clerk at a dime store, earning approximately $10 per hour at each of these jobs.

the tortious conduct. Instead, these damages are contingent and speculative, rendering plaintiff's claim for work-loss damages barred under Michigan law to the extent that her claim is based on potential wages as a dental hygienist.

In *Hannay* we affirm the Court of Appeals' holding with respect to the type of damages recoverable for bodily injury under the motor vehicle exception to governmental immunity, MCL 691.1405, but we reverse the Court of Appeals' holding that plaintiff presented sufficient evidence to support her claim for work-loss damages as a dental hygienist. In *Hunter* we reverse the Court of Appeals' holding with respect to the type of damages recoverable for bodily injury under the motor vehicle exception to governmental immunity, MCL 691.1405. We remand both cases to the respective trial courts for further proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

### A. *HANNAY*

This matter arises from a February 13, 2007 motor vehicle accident involving a vehicle driven by plaintiff Heather Hannay and a salt truck owned by defendant Michigan Department of Transportation (MDOT) and driven by MDOT's employee, Brian Silcox. Silcox failed to stop at a stop sign, and the salt truck collided with plaintiff's vehicle. Plaintiff alleged that Silcox[5] and MDOT, as Silcox's employer and the owner of the salt truck, were liable for damages caused by Silcox's negligence. Plaintiff alleged injuries to her shoulders, neck, spine, back, head, chest, arms, knees, and other internal and external

---

[5] Defendant Silcox is not involved in this appeal because plaintiff dismissed her complaint against him before trial began.

4

injuries to her body. Plaintiff claimed all economic damages compensable under the no-fault act, but specifically alleged allowable expenses and work loss in excess of the statutory limitations.[6] MDOT raised governmental immunity as an affirmative defense.

Following a bench trial, the trial court concluded that MDOT was liable for work-loss damages exceeding the statutory limitations under the no-fault act and that plaintiff was entitled to work-loss damages as a dental hygienist earning $28 per hour.[7] In reaching its conclusion, the court found that it was "more likely than not" that plaintiff would "have been admitted into the Dental Hygienist program at LCC," that it was "more likely than not [that she would] have successfully completed the program," and that plaintiff had proven part-time, but not full-time, employment of three days a week.

The Court of Appeals affirmed, concluding that the trial court did not err by awarding plaintiff economic damages and that the trial court's factual findings supported the calculation of plaintiff's work-loss award.[8] Regarding the trial court's conclusion that

[6] Plaintiff also alleged all noneconomic damages compensable under the no-fault act for the serious impairment of a body function or permanent serious disfigurement. Defendant did not appeal the trial court's finding that plaintiff suffered a serious impairment of a body function or the trial court's award of noneconomic damages, and thus, those issues are not before this Court. Therefore, while the issue of noneconomic damages is at issue in *Hunter*, it is not at issue in *Hannay*.

[7] The trial court calculated plaintiff's work-damages based on a rate of 60% of full-time employment, i.e., part-time employment, in light of the testimony presented at trial that (1) plaintiff would have been hired to replace Mrs. Johnston, who worked part time, to allow her to retire and (2) Dr. Johnston did not have any full-time dental hygienists currently on staff.

[8] *Hannay*, 299 Mich App at 270, 273-274. The Court of Appeals rejected plaintiff's cross-appeal, in which plaintiff argued that the trial court erred by calculating her work-loss damages on the basis of part-time employment rather than full-time employment. *Id.* at 273.

work-loss damages were recoverable against a governmental entity in light of the motor vehicle exception, the Court of Appeals held that "the bodily injury that must be incurred to maintain an action against a governmental entity and the items of damages recoverable from those injuries are separate and distinct from one another."[9] Thus, the panel concluded that "work-loss benefits . . . that exceed the statutory personal protection insurance benefit maximum pursuant to MCL 500.3135(3) are awardable against governmental entities . . . ."[10] The panel characterized work-loss damages as "items of damages that arise from the bodily injuries suffered by plaintiff," and explained that "[t]o hold otherwise would conflate the actual bodily-injury requirement for maintaining a motor vehicle cause of action against a governmental entity with the types of damages recoverable as a result of the bodily injury."[11]

## B. *HUNTER*

This matter arises from a July 20, 2009 motor vehicle accident involving plaintiff Harold Hunter, Jr., and a dump truck owned by defendant City of Flint Transportation Department (Flint) and driven by Flint's employee, defendant David Sisco.[12] Flint's vehicle sideswiped plaintiff's vehicle.

---

[9] *Id*. at 270.

[10] *Id*.

[11] *Id*.

[12] Defendant Sisco is not involved in this appeal because the trial court granted summary disposition in his favor.

Plaintiff sued Flint as the employer of Sisco and owner of the dump truck and independently for negligent entrustment of a motor vehicle. Plaintiff alleged that the injuries he suffered amounted to a serious impairment of a bodily function, a permanent and serious disfigurement, and a serious neurological defect (closed-head injury). According to plaintiff, he suffered injuries to his spine as a result of the accident. Plaintiff alleged noneconomic damages, namely, pain and suffering, as well as shock and emotional damages.[13] Flint raised governmental immunity as an affirmative defense.

Flint filed a motion for summary disposition under MCR 2.116(C)(7) and (10), asserting that plaintiff could not succeed in a claim against Flint because the damages he sought were not compensable under the motor vehicle exception to governmental immunity and that plaintiff failed to establish that he suffered a threshold injury under the no-fault act. Flint's position was that because plaintiff's no-fault provider was liable for economic damages under the no-fault act, and because the motor vehicle exception to governmental immunity does not allow for recovery of noneconomic damages, the claim against Flint should be dismissed. The trial court denied Flint's motion for summary disposition, concluding that "bodily injury" encompasses noneconomic damages associated with bodily injury and finding that there was a genuine issue of material fact regarding whether plaintiff suffered a serious impairment of a bodily function that was caused by the accident.

---

[13] Plaintiff also alleged economic damages. Flint did not challenge plaintiff's ability to recover economic damages. Therefore, while the issue of whether economic damages are compensable under the motor vehicle exception to governmental immunity is at issue in *Hannay*, it is not in *Hunter*.

7

The Court of Appeals reversed the trial court's denial of the motion for summary disposition in part, holding that noneconomic damages "are precluded under MCL 691.1405 because a governmental agency may only be liable for 'bodily injury' and 'property damage,' " and noneconomic damages "do not constitute physical injury to the body and do not fall within the motor vehicle exception."[14] Plaintiff filed a motion for reconsideration in light of the Court of Appeal's decision in *Hannay*, but the panel denied the motion.

## II. STANDARD OF REVIEW

The meaning of the phrase "liable for bodily injury" is an issue of statutory interpretation, which this Court reviews de novo.[15] The role of this Court in interpreting statutory language is to "ascertain the legislative intent that may reasonably be inferred from the words in a statute."[16] In doing so, "[c]ourts must give effect to every word,

---

[14] *Hunter*, 300 Mich App at 235-236, 241. The panel, however, affirmed the trial court's ruling that a genuine issue of material fact remained regarding whether plaintiff suffered a serious impairment of a body function, and remanded "for the trial court to hold a full evidentiary hearing to determine whether plaintiff did, indeed, suffer a serious impairment of body function and whether the collision caused his injury." *Id*. at 243. We denied leave to appeal regarding these matters; therefore, they are not before this Court. As discussed at greater length later in this opinion, however, we take this opportunity to clarify the propriety of the panel's inclusion of the "serious impairment" question in its ordered evidentiary hearing, given the interrelationship between that determination and the immunity issues now before us.

[15] *In re Bradley Estate*, 494 Mich 367, 377; 835 NW2d 545 (2013).

[16] *People v Couzens*, 480 Mich 240, 249; 747 NW2d 849 (2008).

8

phrase, and clause in a statute and avoid an interpretation that renders nugatory or surplusage any part of a statute."[17] This Court has explained:

> When construing a statute, we consider the statute's plain language, and we enforce clear and unambiguous language as written. While terms must be construed according to their plain and ordinary meaning, words and phrases as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.[18]

"[W]ords and phrases used in an act should be read in context with the entire act and assigned such meanings as to harmonize with the act as a whole," and "a word or phrase should be given meaning by its context or setting."[19]

While this Court reviews a trial court's factual findings, such as those used to calculate a damages award, for clear error,[20] we review de novo the applicability of those facts to the law.[21]

Moreover, when a party files suit against a governmental agency, it is the burden of that party to plead "his or her claim in avoidance of governmental immunity."[22] A party can bring a motion for summary disposition under MCR 2.116(C)(7), as was the

---

[17] *Id.*

[18] *Bradley Estate*, 494 Mich at 377 (quotation marks and footnotes omitted).

[19] *Couzens*, 480 Mich at 249-250.

[20] MCR 2.613(C). See also *Ford Motor Co v Dep't of Treasury*, 496 Mich 382, 389; 852 NW2d 786 (2014).

[21] *Cain v Mich Dep't of Corrections*, 451 Mich 470, 503 n 38; 548 NW2d 210 (1996).

[22] *Bradley Estate*, 494 Mich at 377.

case in *Hunter,* on the ground that the claim is barred by governmental immunity.[23] Plaintiff Hunter also filed a motion for summary disposition under MCR 2.116(C)(10), which is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law."[24] This Court reviews de novo decisions regarding motions for summary disposition.[25]

### III. ANALYSIS

### A. THE GOVERNMENTAL TORT LIABILITY ACT

Sovereign immunity and governmental immunity, while related concepts, are not synonymous.[26] "Sovereign immunity refers to the immunity of the state from suit and from liability, while governmental immunity refers to the similar immunities enjoyed by the state's political subdivisions."[27] As we recently explained in *In re Bradley Estate,* the GTLA replaced and was preceded by Michigan jurisprudence, dating back to 1837, "recogniz[ing] the preexisting common-law concept of sovereign immunity, which immunizes the 'sovereign' state from all suits to which the state has not consented, including suits for tortious acts by the state."[28] MCL 691.1407(1) codifies this common-

---

[23] *Id.* at 376-377.

[24] MCR 2.116(C)(10).

[25] *Bradley Estate,* 494 Mich at 376.

[26] *Ballard v Ypsilanti Twp,* 457 Mich 564, 567; 577 NW2d 890 (1998).

[27] *Id.* at 567-568.

[28] *Bradley Estate,* 494 Mich at 377-378.

10

law sovereign immunity concept and "limits a governmental agency's exposure to tort liability."[29]

However, the GTLA not only provides immunity for the state and its agencies, like defendant MDOT in *Hannay*, but also provides immunity for the state's political subdivisions, such as defendant Flint in *Hunter*.[30] We explained in *Robinson v Lansing* that "[i]n Michigan, governmental immunity was originally a common-law doctrine that protected all levels of government."[31] However, this Court, in 1961, "abolished common-law governmental immunity with respect to municipalities."[32] The Legislature reacted by enacting the GTLA in 1964, "restoring immunity for municipalities and preserving this protection for the state and its agencies."[33] The GTLA provides six

---

[29] *Id*. at 377-378. MCL 691.1407(1) provides:

> Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

[30] MCL 691.1401(a), (d), (e); MCL 691.1407(1).

[31] *Robinson v Lansing*, 486 Mich 1, 5; 782 NW2d 171 (2010).

[32] *Id*., citing *Williams v Detroit*, 364 Mich 231; 111 NW2d 1 (1961); *McDowell v State Hwy Comm'r*, 365 Mich 268; 112 NW2d 491 (1961).

[33] *Robinson*, 486 Mich at 5. See also MCL 691.1407(1) and *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 593-608; 363 NW2d 641 (1984) (providing a detailed history of sovereign immunity, governmental immunity, and the GTLA).

exceptions to governmental immunity, one of which is the motor vehicle exception—the subject of these cases.[34]

### B. THE MOTOR VEHICLE EXCEPTION

The motor vehicle exception to governmental immunity, MCL 691.1405, provides:

> Governmental agencies *shall be liable for bodily injury and property damage* resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner, as defined in Act No. 300 of the Public Acts of 1949, as amended, being sections 257.1 to 257.923 of the Compiled Laws of 1948.

This provision has remained unchanged from its original phrasing when enacted as part of the GTLA in 1964.[35] The heart of our inquiry is the interpretation of the phrase "liable for bodily injury," which contains two key components: (1) "liable for" and (2) "bodily injury."

---

[34] The six statutory exceptions to governmental immunity contained within the GTLA precede and follow the general grant of immunity in MCL 691.1407(1): "the highway exception, MCL 691.1402; the motor-vehicle exception, MCL 691.1405; the public-building exception, MCL 691.1406; the proprietary-function exception, MCL 691.1413; the governmental-hospital exception, MCL 691.1407(4); and the sewage-disposal-system-event exception, MCL 691.1417(2) and (3)." *Wesche v Mecosta Co Road Comm*, 480 Mich 75, 84 n 10; 746 NW2d 847 (2008).

[35] 1964 PA 170. The motor vehicle exception existed before the GTLA was enacted, though the wording differed and there were separate statutes relating to the liability of the state's political subdivisions and the state itself. See 1945 PA 87, which became 1948 CL 691.141; 1945 PA 127, which became 1948 CL 691.151.

## 1. "LIABLE FOR"

Our recent decision in *Bradley Estate* sheds light on the proper interpretation of the phrase "liable for," though the motor vehicle exception was not at issue in that case. Instead, we interpreted the phrase "tort *liability*" found in the GTLA's broad grant of immunity, MCL 691.1407(1),[36] which grants immunity to governmental entities from "tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." Specifically, we were called on to decide whether a particular cause of action sought to impose "tort liability" within the meaning of MCL 691.1407(1), thus, triggering governmental immunity pursuant to that provision.[37] We concluded that " 'tort' as used in MCL 691.1407(1) is a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages."[38] Looking at the phrase as a whole, we explained:

> Our analysis, however, requires more. MCL 691.1407(1) refers not merely to a "tort," nor to a "tort claim," nor to a "tort action," but to "tort *liability*." The term "tort," therefore, describes the type of liability from which a governmental agency is immune. As commonly understood, the word "liability," refers to liableness, i.e., "the state or quality of being liable." *To be "liable" means to be "legally responsible*[.]" Construing the term "liability" along with the term "tort," it becomes apparent that the Legislature intended "*tort liability*" *to encompass legal responsibility arising from a tort.* We therefore hold that "tort liability" as used in MCL 691.1407(1) means all legal responsibility arising from a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages.[39]

---

[36] *Bradley Estate*, 494 Mich at 371.

[37] *Id*. at 371, 380-385.

[38] *Id*. at 385.

[39] *Id*. (footnotes omitted; some emphasis added; alteration in original).

13

Because this Court concluded that "liable" means "legally responsible," our interpretation of "tort liability" in MCL 691.1407(1) informs how to interpret the phrase "liable for" in the motor vehicle exception. We see no reason why this Court's prior analysis of the word "liability," which stems from the word "liable," should not likewise apply in this case, particularly given that the phrases "tort liability" and "liable for" are contained within the same statute—the GTLA.[40] Thus, the phrase "liable for bodily injury" means *legally responsible* for bodily injury.

### 2. "BODILY INJURY"

We interpreted the phrase "bodily injury" in *Wesche v Mecosta Co Rd Comm*, specifically within the context of the motor vehicle exception.[41] The central issue in *Wesche* was "whether the motor vehicle exception . . . authorizes a claim for loss of consortium against a governmental agency."[42] In analyzing the language of the motor vehicle exception, we stated: "This language is clear: it imposes liability for 'bodily injury' and 'property damage' resulting from a governmental employee's negligent operation of a government-owned motor vehicle."[43] Because the GTLA does not define "bodily injury," this Court resorted to dictionary definitions, stating:

---

[40] See *Robinson*, 486 Mich at 17 ("[U]nless the Legislature indicates otherwise, when it repeatedly uses the same phrase in a statute, that phrase should be given the same meaning throughout the statute.").

[41] *Wesche*, 480 Mich 75.

[42] *Id*. at 79.

[43] *Id*. at 84.

14

The word "bodily" means "of or pertaining to the body" or "corporeal or material, as contrasted with spiritual or mental." *Random House Webster's College Dictionary* (2000). The word "injury" refers to "harm or damage done or sustained, [especially] bodily harm." *Id*. *Thus, "bodily injury" simply means a physical or corporeal injury to the body*. It is beyond dispute that a loss of consortium is not a physical injury to a body. A claim for loss of consortium is simply one for loss of society and companionship. . . . Thus, because loss of consortium is a *nonphysical injury*, it does not fall within the categories of damage for which the motor-vehicle exception waives immunity.[44]

We see no reason to deviate from our prior analysis. Thus, because we have interpreted "bodily injury" to mean "a physical or corporeal injury to the body," "liable for bodily injury" means legally responsible for *a physical or corporeal injury to the body*.

### 3. "LIABLE FOR BODILY INJURY"

Our final consideration in looking at the phrase "liable for bodily injury" as a whole is to determine the scope of the liability to which the government is exposed under the motor vehicle exception. Essential to this inquiry is the fundamental difference between an injury and the damages that arise from that injury. This Court's decision in *Henry* is instructive for determining the scope of liability in that it delineates this distinction.[45] There, we set forth the traditional elements of a negligence action—"(1) duty, (2) breach, (3) causation, and (4) damages"[46]—but explained that "it has always

---

[44] *Id*. at 84-85 (quotation marks and citations omitted; emphasis added; alteration in original). We point out that a prior decision of this Court, *Roberts v Detroit*, 102 Mich 64; 60 NW 450 (1894), effectively resolved the question whether a loss of consortium is a "bodily injury," within the context of an early version of the highway exception, concluding that it was not.

[45] *Henry v Dow Chemical Co*, 473 Mich 63; 701 NW2d 684 (2005).

[46] *Id*. at 74.

been implicit in this analysis that in order to prevail, a plaintiff must also demonstrate *an actual injury to person or property*."[47]  We then made clear that "such injury constitutes the *essence of a plaintiff's claim*,"[48] and that "injury" and "damages" are distinct from one another, explaining:

> While the courts of this state may not have always clearly articulated this injury requirement, *nor finely delineated the distinction between an "injury" and the "damages" flowing therefrom*, the injury requirement has always been present in our negligence analysis.  It has simply always been the case in our jurisprudence that plaintiffs alleging negligence claims have also shown that their claims arise from *present physical injuries*.  We are not aware of any Michigan cases in which a plaintiff has recovered on a negligence theory without demonstrating some present physical injury.  Thus, in all known cases in Michigan in which a plaintiff has satisfied the "damages" element of a negligence claim, he has also satisfied the "injury" requirement.[49]

Thus, "damages" and "injury" are not one and the same—damages *flow from* the injury.

In light of this Court's prior interpretation of "tort liability" in *Bradley Estate*, this Court's interpretation of "bodily injury" in *Wesche*, and this Court's delineation of the difference between "injury" and "damages" in *Henry*, "liable for bodily injury" in the present case means legally responsible *for damages flowing from* a physical or corporeal injury to the body.  Stated differently, "bodily injury" is simply the category of harm (i.e., the type of injury) for which the government waives immunity under MCL 691.1405 and, thus, for which damages that naturally flow are compensable.  Therefore, the legal

---

[47] *Id*. (emphasis added).

[48] *Id*. (emphasis added).

[49] *Id*. at 75 (emphasis added).

16

responsibility that arises from "bodily injury" is responsibility for *tort damages* that flow from that injury. This conclusion is supported by the fact that the GTLA generally grants immunity from "tort liability,"[50] and to the extent that this immunity is waived, the resulting liability, logically, is liability for *tort damages*.

It is a longstanding principle in this state's jurisprudence that tort damages generally include damages for all the legal and natural consequences of the injury (i.e., the damages that naturally flow from the injury), which may include damages for loss of the ability to work and earn money, as well as pain and suffering and mental and emotional distress damages. For example, in *Sherwood v Chicago & WM R Co*,[51] this Court approved of a jury instruction that stated:

> In estimating the compensatory damages in cases of this character, *all the consequences of the injury*, future as well as past, are to be taken into consideration, including the bodily pain, which is shown by the proofs to be reasonably certain to have naturally resulted from the injury. The injured party, when entitled to recover, should be awarded compensation for all the injuries, past and prospective. These are intended to include and embrace indemnity for actual nursing and medical expenses; also for *loss of power, or loss of capability to perform ordinary labor, or capacity to earn money*, and reasonable satisfaction of physical powers. The elements of damages which the jury are entitled to take into account consist of all effects of the injury complained of, consisting of personal inconvenience, the sickness which the plaintiff endured, the loss of time, *all bodily and mental suffering*, impairment of capacity to earn money, the pecuniary expenses, the disfigurement or permanent annoyance which is liable to be caused by the deformity resulting from the injury; and, in considering what would be a just sum in compensation for the sufferings or injury, the jury are *not only at liberty to consider the bodily pain, but the mental suffering, anxiety, suspense, and fright* may be treated as elements of the injury for

---

[50] MCL 691.1407(1); *Bradley Estate*, 494 Mich at 378, 384-385.

[51] *Sherwood v Chicago & WM R Co*, 82 Mich 374, 383; 46 NW 773 (1890).

which damages, by way of compensation, should be allowed. [Emphasis added.]

Thus, damages for both a loss of the ability to work and earn money as well as pain, suffering, and emotional distress have long been understood as consequences of an injury for which damages are compensable.[52] Additionally, in *Beath v Rapid R Co*, this Court concluded that "[t]he plaintiff was not confined in her recovery to damages sustained by reason of *physical pain and anguish suffered*, but had the right to recover for the *mental pain and anxiety* she was compelled to undergo by reason of the injuries sustained," because "the shame and mortification which the plaintiff had suffered by being obliged to use crutches" "was one of the *elements of damages which might naturally flow from the injury*."[53]

Moreover, recent caselaw of this Court reiterates this longstanding principle. For example, in *Price v High Pointe Oil Co, Inc*,[54] we noted the general rule regarding recovery of damages in a tort action recognized in *Sutter v Biggs*[55] that "the tort-feasor is liable for all injuries resulting directly from his wrongful act, whether foreseeable or not, provided the *damages are the legal and natural consequences of the wrongful act*, and

---

[52] See also *Power v Harlow*, 57 Mich 107, 119; 23 NW 606 (1885) (involving an action for damages for injury caused by negligence and approving of jury instructions on damages, stating, "It was proper for the jury to take into account how the plaintiff might be restricted in his choice of occupation by the injury, and limited in his ability to work; and though the word 'humiliation' was not a fortunate one to make use of, there can be no supposition that its use was misleading").

[53] *Beath v Rapid R Co*, 119 Mich 512, 517-518; 78 NW 37 (1899) (emphasis added).

[54] *Price v High Pointe Oil Co, Inc*, 493 Mich 238; 828 NW2d 660 (2013).

[55] *Sutter v Biggs*, 377 Mich 80; 139 NW2d 684 (1966).

18

are such as, according to common experience and the usual course of events, might reasonably have been anticipated."[56] This body of caselaw collectively demonstrates the longstanding principle that tort damages generally include the damages that naturally flow from the injury, which may include both economic damages, such as damages incurred due to the loss of the ability to work and earn money, as well as noneconomic damages, such as pain and suffering and mental and emotional distress damages.[57]

As indicated by the *Hannay* Court of Appeals panel, concluding that "bodily injury" does not include damages naturally flowing from that injury would conflate the requirement of a bodily injury (i.e., the injury requirement recognized in *Henry*) with the

---

[56] *Price*, 493 Mich at 255, quoting *Sutter*, 377 Mich at 86. We held in *Price*, however, that because no case in this state had permitted a plaintiff to recover for noneconomic damages resulting *only* from the destruction of property, the narrower common-law rule applicable to negligent destruction of property controlled. *Id.* at 254-256.

See also *Grenawalt v Nyhuis*, 335 Mich 76, 87; 55 NW2d 736 (1952) (holding that the trial court properly refused to charge the jury with an instruction that the plaintiff, who was injured at a beauty salon, "was not entitled to recover damages for annoyance, discomfiture[,] and humiliation suffered by her as the result of her inability to have her hair dyed or tinted").

[57] We note that, under the common law, a plaintiff might be able to recover damages for emotional distress even if that distress is not alleged to flow from an injury for which the plaintiff seeks compensation. We have limited recovery on that basis, however, to circumstances in which the alleged emotional distress is accompanied by physical symptoms. See *Henry*, 473 Mich at 79 (explaining that "our common law recognizes emotional distress as the basis for a negligence action only when a plaintiff can also establish *physical* manifestations of that distress"); *Daley v LaCroix*, 384 Mich 4, 12-13; 179 NW2d 390 (1970) (overruling caselaw imposing the "impact requirement" and holding "that where a definite and objective physical injury is produced as a result of emotional distress proximately caused by defendant's negligent conduct, the plaintiff in a properly pleaded and proved action may recover in damages for such physical consequences to himself notwithstanding the absence of any physical impact upon plaintiff at the time of the mental shock").

19

items of damages that are recoverable as a result of that injury (i.e., the damages that naturally flow from the bodily injury). Thus, the statutory language of MCL 691.1405 does not support a conclusion that the Legislature intended to restrict liability to certain items of damages resulting from a bodily injury. Instead, the language only indicates that the Legislature intended to restrict the *categories of injury* for which the tort damages that naturally flow are compensable. We therefore hold that the phrase "liable for bodily injury" within the motor vehicle exception means that a plaintiff who suffers a bodily injury may recover for items of tort damages that naturally flow from that physical or corporeal injury to the body, which may include both economic and noneconomic damages. As discussed later in this opinion, however, the scope of these damages is limited by the no-fault act.[58]

## 4. "BODILY INJURY" IS A TERM OF ART IN MICHIGAN JURISPRUDENCE

Our analysis interpreting the phrase "liable for bodily injury" gains further support from our state's history of governmental-immunity legislation, which indicates that "bodily injury" is a term of art used by the Legislature in the context of governmental immunity to refer to a category of injury for which damages that naturally flow are compensable, as long as those damages are properly pleaded. As a legal term of art, "bodily injury" is a technical phrase that has "acquired a peculiar and appropriate meaning in the law" and, therefore, "shall be construed and understood according to such peculiar and appropriate meaning."[59]

---

[58] See Part III.B.6 of this opinion.

[59] MCL 8.3a. See also *Bradley Estate*, 494 Mich at 377.

20

This phrase appeared in the context of governmental immunity in 1861 in the first version of the highway exception.  Public Act 197 of 1861 provided

> [t]hat any person or persons sustaining *bodily injury* upon any of the public highways in this State, by reason of neglect to keep in repair any bridge or culvert, by any township or corporation whose duty it is to keep such bridge or culvert in repair, such township or corporation *shall be liable to, and shall pay* to the person or persons so injured or disabled, *just damages*, to be recovered in an action of trespass on the case, before any court of competent jurisdiction.[60]

The 1885[61] and 1887 versions of the highway exception added sidewalks to the list of structures for which there was a duty to keep in repair.[62]  Therefore, as far back as 1861, the phrase "bodily injury" was used by the Legislature to connote a category of injury for which damages—specifically, "just damages"—were compensable.

Our decisions implicating these early versions of the highway exception urge a consistent interpretation in this case.  For example, regarding damages because of an inability to work, this Court's decision in *Moore v Kalamazoo* is instructive.[63]  In that

---

[60] 1861 PA 197 (emphasis added).  See also several versions that followed that were materially the same with regard to imposing liability for "just damages" for "bodily injury": 1879 PA 244, 1885 PA 214, and 1887 PA 264.  1887 PA 264 ultimately became 1897 CL 3441.

[61] Public Act 214 of 1885 was ruled unconstitutional by this Court because the statute contained a provision abrogating common-law liability with regard to injuries covered by the statute and a provision setting dollar limitations on sidewalk claims that were not expressed in the title of the act.  *Church v Detroit*, 64 Mich 571, 573-574; 31 NW 447 (1887).  However, the sidewalk provision was included in the version that followed, 1887 PA 264.

[62] 1887 PA 264.

[63] *Moore v Kalamazoo*, 109 Mich 176; 66 NW 1089 (1896).  The statute in effect at the time was 1887 PA 264, which became 1897 CL 3441, and provided

21

case, the plaintiff was injured due to a defective sidewalk, and the trial court instructed that the jury "should take into account her *past earnings . . . during the time that she has already been injured,* and the time that you find, from the evidence, that she will *remain incapable of earning anything in the future . . . .*"[64] This Court concluded that the allegations were sufficient to warrant admission of the proofs of damages and the instruction given.[65] This case made clear that the damages that were recoverable as a result of a bodily injury included damages resulting from an inability to work that flow from the injury, if properly alleged.[66]

> [t]hat any person or persons sustaining *bodily injury* upon any of the public highways or streets in this state, by reason of neglect to keep such public highways or streets, and all bridges, sidewalks, cross-walks and culverts on the same in reasonable repair, and in condition reasonably safe and fit for travel by the township, village, city or corporation whose corporate authority extends over such public highway, street, bridge, sidewalk, cross-walk or culvert, and whose duty it is to keep the same in reasonable repair, such township, village, city or corporation *shall be liable to and shall pay* to the person or persons so injured or disabled *just damages*, to be recovered in an action of trespass on the case before any court of competent jurisdiction. [Emphasis added.]

[64] *Moore*, 109 Mich at 178.

[65] *Id*. at 179.

[66] See also *Abbott v Detroit*, 150 Mich 245, 251-252; 113 NW 1121 (1907), a defective crosswalk case in which this Court approved of jury instructions regarding loss of earnings, stating:

> The charge is not subject to the criticism that it allowed the jury to speculate. It was confined to such damages arising from this injury as the jury from the evidence might find by reason of the impairment of her earning capacity. There was evidence as to the wages she earned upon which the jury could base their judgment as to the amount of these damages. The small verdict returned is an indication that no speculation was indulged in by the jury.

22

In another example, this Court's 1894 decision in *Roberts v Detroit* demonstrated that pain and suffering damages, like damages resulting from an inability to work, were recoverable for a bodily injury in the context of the highway exception.[67] The plaintiff sought loss-of-consortium damages from the city of Detroit that resulted from injuries his wife incurred due to falling on a defective sidewalk. The issue was whether the highway exception applied to provide the plaintiff a cause of action in light of the fact that it was the plaintiff's *wife* who was physically injured, rather than the plaintiff himself.[68] This Court stated, "[s]o far as [the highway exception] is concerned, it limits the liability *to cases of bodily injury*," and concluded that:

> The plaintiff's case does not fall within [the highway exception] (1) because he has no right to recover for the *bodily injury—i.e., pain and suffering, etc*—of another; (2) because the statute in terms limits the recovery to the person so injured or disabled.[69]

It is clear from *Roberts* that had the plaintiff, rather than his wife, suffered a bodily injury, damages naturally flowing from that injury would have been recoverable under the highway exception, including damages for "pain and suffering." Further, this case demonstrates that while damages that naturally flowed from the injury were compensable, the person seeking such damages must have had a *bodily injury*.

---

The statute in effect at the time was 1887 PA 264, which became 1897 CL 3441.

[67] *Roberts v Detroit*, 102 Mich 64; 60 NW 450 (1894).

[68] *Id*. at 65-66.

[69] *Id*. at 67 (emphasis added).

More generally, this Court's decision in *Hall v City of Cadillac* demonstrated that damages that were the natural consequence of a bodily injury were recoverable.[70] *Hall* involved a city's failure to keep a sidewalk in reasonable repair, which resulted in bodily injury to the plaintiff, and this Court reviewed the instructions to the jury.[71] This Court concluded in relevant part that the trial court properly instructed the jury that "*damages for the injury suffered and its natural consequences* were recoverable, up to the time of trial, together with such prospective damages of like character as were reasonably probable . . . ."[72] Thus, damages that were a natural consequence of the bodily injury were recoverable.

In light of the foregoing, by the time the phrase "bodily injury" appeared in the 1964 version of the motor vehicle exception,[73] that phrase long had a settled meaning in Michigan law. "Bodily injury" was understood to be a category of injury for which damages that were the natural consequence flowed, including both damages resulting from an inability to work, as well as pain and suffering, so long as those damages were properly pleaded.

---

[70] *Hall v City of Cadillac*, 114 Mich 99, 100; 72 NW 33 (1897). The statute in effect at the time was 1887 PA 264, which became 1897 CL 3441.

[71] *Id*.

[72] *Id*. at 103.

[73] 1964 PA 170.

## 5. THE *HUNTER* COURT'S RELIANCE ON *WESCHE* IS MISPLACED

The Court of Appeals in *Hunter* relied in part on *Wesche*'s definition of "bodily injury" in concluding that because noneconomic damages do not constitute a physical injury, such damages are not compensable under the motor vehicle exception.[74] The panel first looked to *Wesche* and agreed with this Court's conclusion that the term "liable for bodily injury" does not create a threshold requirement, explaining, "[h]ad the Legislature intended to simply create a threshold that, once established, would permit noneconomic or emotional damages, it would have done so explicitly . . . ."[75] The panel determined that the *Wesche* definition of "bodily injury" was correct, and based on that definition, concluded that damages for pain and suffering as well as shock and emotional-distress damages do not constitute a "bodily injury" that is compensable under the motor vehicle exception.[76]

We agree with the *Hunter* panel only to the extent that it concluded that *Wesche* correctly defined "bodily injury." We concluded in *Wesche* that the motor vehicle exception does not waive governmental immunity for loss-of-consortium claims, reasoning that "a loss of consortium is not a physical injury to a body," and while "a loss-of-consortium claim is derivative of the underlying bodily injury, it is nonetheless regarded as *a separate cause of action* and *not merely an item of damages*."[77] We

---

[74] *Hunter*, 300 Mich App at 240-241.

[75] *Id*. at 236.

[76] *Id*. at 240-241.

[77] *Wesche*, 480 Mich at 85 (emphasis added).

25

concluded that the motor vehicle exception "does not state or suggest that governmental agencies are liable for *any* damages once a plaintiff makes a threshold showing of bodily injury or property damage."[78]  Unlike provisions of the no-fault act that create a statutory threshold, such as MCL 500.3135(1), MCL 691.1405 "contains no such language."[79] Instead, "[i]t merely provides that governmental agencies 'shall be liable for bodily injury and property damage' and says nothing to suggest that *a separate cause of action*, such as one for loss of consortium, may be asserted once a threshold of 'bodily injury' has been met."[80]  For these reasons, this Court held "that a loss of consortium is not a 'bodily injury,' " and therefore, governmental entities are entitled to governmental immunity for loss-of-consortium claims.[81]

We disagree with the *Hunter* panel's construction of *Wesche* because it conflates injury with damages.  We stated in *Wesche* that "[t]he waiver of immunity is limited to two categories of *damage*: bodily injury and property damage."[82]  Notably, the word "damage" in the singular has a very different meaning than the plural word "*damages*." *Black's Law Dictionary* defines "damage" as "[l]oss or injury to person or property <actionable damage resulting from negligence>," and "damages" as "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury <the plaintiff

---

[78] *Id*. at 85-86.

[79] *Id*. at 86.

[80] *Id*.

[81] *Id*. at 87.

[82] *Id*. at 84 (emphasis added).

26

seeks $8,000 in damages from the defendant>."[83]  The Court of Appeals in *Hunter* ostensibly read the word "damage" in our opinion in *Wesche* to mean "damages," which was an error.[84]  Moreover, our decision in *Wesche* focused on the fact that a loss of consortium does *not* constitute an "item of damages" because it is not a claim for bodily injury.[85]  Thus, it can be inferred from our decision that items of damages naturally flowing from a bodily injury are compensable.  Our conclusion in *Wesche* that a bodily injury is not a threshold requirement that, once met, permits recovery of all potential damages and that, instead, a plaintiff seeking damages for a bodily injury must have actually suffered a bodily injury, is consistent with this Court's decision in *Roberts*.[86]  The *Roberts* decision made clear that a plaintiff cannot seek damages for a bodily injury when the requested damages resulted from the bodily injury of *another*.[87]  We therefore reaffirm that "bodily injury" in the motor vehicle exception is not a threshold requirement that opens all doors of potential liability for tort damages; rather, it is a *category* of injury for which items of tort damages that naturally flow are available, as confined by the limitations of the no-fault act.[88]

---

[83] *Black's Law Dictionary* (9th ed).

[84] *Hunter*, 300 Mich App at 241 ("Such *damages* simply do not constitute physical *injury* to the body and do not fall within the motor vehicle exception.") (emphasis added).

[85] *Wesche*, 480 Mich at 85 ("It is beyond dispute that a loss of consortium is not a physical injury to a body.").  This Court went on to expressly state that "loss of consortium is not merely an item of damages."  *Id*.

[86] *Roberts*, 102 Mich 64.

[87] *Id*. at 67.

[88] See Part III.B.6 of this opinion.

## 6. DAMAGES COMPENSABLE UNDER THE MOTOR VEHICLE EXCEPTION

Our analysis, however, does not end with our interpretation of the phrase "liable for bodily injury" within the motor vehicle exception. While governmental entities are legally responsible for damages naturally flowing from a physical or corporeal injury to the body under the language of the motor vehicle exception, this liability is *limited* by the no-fault act, which generally abrogates "tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle," unless the damages come within an enumerated exception.[89] As we explained in *Hardy v Oakland Co*, "the restrictions set forth in the no-fault act control the broad statement of liability found in the immunity statute."[90] Thus, to the extent that the no-fault act narrows the damages available in a third-party tort action through its general abolition of tort liability and provision of certain enumerated exceptions, those restrictions likewise apply when the tortfeasor is a governmental entity.

Relevant to the present cases, MCL 500.3135(1), (2), and (3)(b) allow third-party tort actions for noneconomic damages if the "death, serious impairment of body function, or permanent serious disfigurement" threshold is met, while MCL 500.3135(3)(c) allows for third-party tort actions for certain kinds of economic damages, specifically "[d]amages for allowable expenses, work loss, and survivor's loss . . . in excess of the daily, monthly, and 3-year limitations contained in" the sections applicable to those three

---

[89] MCL 500.3135(3).

[90] *Hardy v Oakland Co*, 461 Mich 561, 565; 607 NW2d 718 (2000).

types of no-fault benefits.[91]   Therefore, we hold that a plaintiff may bring a third-party tort action for economic damages, such as work-loss damages, and noneconomic damages, such as pain and suffering or emotional distress damages, against a governmental entity if the requirements under MCL 500.3135 have been met.[92]   In this respect, we affirm the *Hannay* panel's conclusion that work-loss benefits that exceed the statutory maximum are available against a governmental entity,[93] and we reverse the *Hunter* panel's conclusion that noneconomic damages "do not fall within the motor vehicle exception."[94]

---

[91] MCL 500.3135(3)(c); *Johnson v Recca*, 492 Mich 169, 197; 821 NW2d 520 (2012).

[92] We note, however, that our holding in this regard is not intended to suggest that the no-fault act supersedes the GTLA.  Rather, MCL 691.1405 and MCL 500.3135 may be read harmoniously to provide that a plaintiff may avoid governmental immunity if he suffers "bodily injury" under the motor vehicle exception, but he must also meet the requirements contained within the enumerated exceptions to the no-fault act's abolition of tort liability, such as the "death, serious impairment of body function, or permanent serious disfigurement" threshold pertaining to recovery of noneconomic damages.

[93] *Hannay*, 299 Mich App at 270.

[94] *Hunter*, 300 Mich App at 241.  The *Hunter* panel further erred in its analysis of plaintiff Hunter's claimed damages by conflating certain questions of liability under the no-fault act with questions of immunity under the GTLA.  As previously noted, after the *Hunter* panel erroneously concluded that noneconomic damages were beyond the scope of the motor vehicle exception's waiver of immunity, it remanded for the trial court to conduct an evidentiary hearing to resolve outstanding factual issues bearing on whether the City was immune from plaintiff Hunter's claimed excess economic damages and, thus, entitled to summary disposition as to those damages under MCR 2.116(C)(7) as well.  The *Hunter* panel included among these factual issues whether plaintiff Hunter suffered a "serious impairment of body function" as contemplated under MCL 500.3135, reasoning that "[a] plaintiff making a tort claim for excess damages under the motor vehicle exception must, as a threshold, show a serious impairment of body function." *Id*. at 241.  This reasoning is flawed in two respects.  First, while we agree a showing of "death, serious impairment of body function, or permanent serious disfigurement" is necessary under the no-fault act in order for a plaintiff to recover *noneconomic* damages

## C. *HANNAY*: WORK-LOSS DAMAGES AWARDED

Because we have concluded that damages for work loss are compensable under the motor vehicle exception, we must now address whether the facts as found were sufficient to satisfy the statutory language defining work-loss damages with respect to plaintiff's claim of work loss as a dental hygienist. Damages in tort actions that are "[r]emote, contingent, or speculative" are not compensable because they are not in conformity with the general rule that a "tortfeasor is liable for all injuries resulting directly from his wrongful act," as long as "the damages are the legal and natural consequences of the wrongful act, and are such as, according to common experience and the usual course of events, might reasonably have been anticipated."[95] This Court has elaborated on this point, stating:

in a third-party tort action against a governmental entity, see *Hardy*, 461 Mich at 565, neither the no-fault act nor the GTLA requires this for a plaintiff to recover excess *economic* damages. Second, and relatedly, while a plaintiff must demonstrate "death, serious impairment of body function, or permanent serious disfigurement" to recover noneconomic damages in a third-party tort action, whether that requirement has been met is a question of liability, not immunity. As discussed earlier, to demonstrate immunity has been waived as to a claim for such damages, the GTLA, by its plain language, requires a showing of "bodily injury." Accordingly, while plaintiff Hunter's path to recovery of noneconomic damages from defendant Flint requires him to demonstrate both a "bodily injury" under the GTLA and a "serious impairment of body function" under the no-fault act, he need only clear the first such hurdle in opposing defendant Flint's motion for summary disposition under MCR 2.116(C)(7). For these reasons, it was error for the *Hunter* panel to conclude that resolution of this motion with regard to excess economic damages would require an evidentiary hearing before the court to determine whether plaintiff Hunter suffered a "serious impairment of body function."

[95] *Sutter*, 377 Mich at 86. See also *Price*, 493 Mich at 254-255. For example, in *Sutter*, a medical malpractice case involving the wrongful excising of the plaintiff's right fallopian tube, this Court rejected the plaintiff's argument that by the trial court refusing the plaintiff's request for instructions pertaining to her claim of damages for the loss of the ability to bear children and resulting emotional suffering, "the jury was precluded by the

> [T]o render a wrongdoer liable in damages in a tort action where the connection is not immediate between the injurious act and the consequences, such nearness in the order of events and closeness in the relation of cause and effect must subsist, so that the influence of the injurious act would predominate over that of other causes, and concur to produce the consequences or be traceable to those causes.[96]

This Court does not, however, "preclude recovery [of damages] for lack of precise proof" or "require a mathematical precision in situations of injury where, from the very nature of the circumstances, precision is unattainable," particularly in circumstances in which the defendant's actions created the uncertainty.[97] The plaintiff bears the burden to prove the damages sought by a preponderance of the evidence.[98]

In addition to these overarching rules for recovery of damages in tort, we recognize that there is a distinction drawn between work loss and loss of earning capacity in the context of claims made under the no-fault act. This Court has made clear that while work-loss damages are compensable under the no-fault act, loss-of-earning-

---

trial judge from considering her full measure of damages." *Id*. at 83. This Court concluded, "[P]laintiff's loss of ability to bear children was not a legal and natural consequence of defendant's act, but, within the meaning of the rule, was contingent, that is, contingent upon the possibility that plaintiff *could* develop a cyst on her remaining tube which *could* require excision of the tube itself." We concluded that "[a]t best, the damages are contingent and, therefore, barred . . . ." *Sutter*, 377 Mich at 87.

[96] *Sutter*, 377 Mich at 86-87.

[97] *Fera v Village Plaza, Inc*, 396 Mich 639, 648; 242 NW2d 372 (1976) (quotation marks and citation omitted).

[98] *Washington v Jones*, 386 Mich 466, 472; 192 NW2d 234 (1971).

capacity damages are not.[99]  This distinction is derived from the statutory language of the no-fault act, specifically MCL 500.3107.[100]

MCL 500.3135(3)(c) allows for third-party tort actions for "[d]amages for allowable expenses, work loss, and survivor's loss as defined in sections 3107 and 3110 *in excess* of the daily, monthly, and 3-year limitations contained in those sections." (Emphasis added.)  MCL 500.3107 defines "work loss" in the context of no-fault benefits, providing, in relevant part:

> (1) Except as provided in subsection (2), personal protection insurance benefits are payable for the following:
>
> \* \* \*
>
> (b) Work loss consisting of loss of income *from work an injured person would have performed* during the first 3 years after the date of the accident if he or she had not been injured. . . .[101]

Importantly, the statutory language requires that work-loss damages consist of lost income from "work an injured person *would* have performed."  We explained in *MacDonald v State Farm* that "work-loss benefits compensate the injured person for income he would have received *but for* the accident."[102]  Thus, work-loss damages are

---

[99] *Ouellette v Kenealy*, 424 Mich 83, 88; 378 NW2d 470 (1985) ("Damages . . . are not recoverable for loss of earning capacity" under the no-fault act).

[100] *Marquis v Hartford Accident & Indemnity (After Remand)*, 444 Mich 638, 648; 513 NW2d 799 (1994).

[101] MCL 500.3107a adds that "work loss for an injured person who is temporarily unemployed at the time of the accident or during the period of disability shall be based on earned income for the last month employed full time preceding the accident."

[102] *MacDonald v State Farm Mut Ins Co*, 419 Mich 146, 152; 350 NW2d 233 (1984) (emphasis added) (concluding that because two weeks after the plaintiff was injured he

32

only available if the accident was the "but for" cause—i.e., cause-in-fact—of the work loss. Indeed, this Court made clear in *Ouellette v Kenealy* that such economic damages "are recoverable in tort only . . . for 'actual' work loss," i.e., "actual loss of income from work an injured person would have performed if he had not been injured," "when the loss of income exceeds the daily, monthly, and three-year limitations."[103]

This Court has expressly recognized that in contrast to work-loss damages, loss of earning capacity damages are those arising from work that an injured person "could" have performed but for the injury.[104] Thus, damages for work loss consist of wages that a person "would" have earned but for the accident,[105] whereas loss-of-earning-capacity damages are wages a person "could" have earned but for the accident.[106] In other words, work-loss damages compensate a plaintiff for the specific wages that he or she would have earned in light of the specific facts of the case, while loss-of-earning-capacity damages compensate a plaintiff for his or her loss of unrealized potential for earning

---

suffered a heart attack that would have independently rendered him unable to work, the plaintiff was "ineligible for work-loss benefits after that date under § 3107(b)").

[103] *Ouellette*, 424 Mich at 87 (quotation marks omitted).

[104] *Marquis*, 444 Mich at 647-648. The *Marquis* Court quoted with approval a Court of Appeals decision that recognized that the earning capacity "could have earned" standard " 'contrasts sharply with the language' " of MCL 500.3107(1)(b) that uses the language "loss of income from work an injured person would have performed . . . ." *Id*. at 648, quoting *Nawrocki v Hawkeye Security Ins Co*, 83 Mich App 135, 140-141; 286 NW2d 317 (1978).

[105] *MacDonald*, 419 Mich at 152.

[106] *Marquis*, 444 Mich at 648.

income, i.e., for possible wages a plaintiff could have earned if he or she pursued potential opportunities, education, etc.

Yet, "[w]ork-loss benefits are not necessarily restricted to a claimant's wage at the time of the accident."[107]  That "a claimant is working a lower paying part-time job at the time of the accident" does not preclude the plaintiff "from proving that he would have taken a higher paying full-time job had he not been injured in a car accident."[108] Ultimately, however, "claimants are left to their proofs."[109]  In the context of assessing work-loss benefits under the no-fault act, this Court has made clear that work loss should not overcompensate a claimant by, for instance, "bas[ing] his work loss, without any proof of actual loss, on the highest paying job he ever had"; instead, it is "intended to compensate claimants approximately dollar for dollar for the amount of wages lost because of the injury or disability."[110]

Because work-loss damages are intended to replace the income a person would have received but for the accident, *prior* wages generally are the most relevant and reliable evidence for determining what a plaintiff actually would have earned had the accident not occurred.[111]  Only in certain circumstances may a plaintiff recover work-loss

---

[107] *Popma v Auto Club Ins Ass'n*, 446 Mich 460, 472; 521 NW2d 831 (1994).

[108] *Id.*

[109] *Id.*

[110] *Id.*

[111] Moreover, in scenarios in which the injured person is "temporarily unemployed at the time of the accident," the Legislature expressly required that a work loss award "*shall* be based on earned income from the last month employed full time preceding the accident." MCL 500.3107a (emphasis added).  In other words, the Legislature required that work-

34

damages for wages he or she could not have earned before the accident, i.e., wages that are not based on the plaintiff's wage history. While the statute by its terms does not limit a plaintiff's work-loss award to the plaintiff's wages at the time of the accident,[112] courts must be cautious in considering wages that the plaintiff could not have earned before the accident in calculating a work-loss award because of the risk that a calculation based on such wages will be contingent and speculative and, therefore, barred under Michigan law.

Michigan caselaw provides some examples of circumstances under which it was appropriate to consider wages the plaintiff could not have earned before the subject accident in determining what wages a plaintiff would have earned but for the accident. In *Gobler v Auto-Owners Ins Co*, this Court interpreted a phrase contained in the survivor's benefits provision of the no-fault act, MCL 500.3108, the language of which is analogous to MCL 500.3107, providing:

---

loss awards must be based on past wage history when the plaintiff was temporarily unemployed. This provision was "intended to remedy the situation in which a claimant is precluded from receiving any work-loss benefits because the claimant is unemployed at the time of the accident." *Popma*, 446 Mich at 469. While this provision does not apply to the plaintiff in this case because she was not temporarily unemployed at the time of the accident, it does provide insight into the Legislature's intent with regard to the meaning of "work loss" generally in that it looked to the wages received by the plaintiff. See *Couzens*, 480 Mich at 249 ("[W]ords and phrases used in an act should be read in context with the entire act and assigned such meanings as to harmonize with the act as a whole."). As the Court of Appeals noted in *Gerardi v Buckeye Union Ins Co*, "By adopting actual past wages as the appropriate standard for [temporarily] unemployed workers, the Legislature merely emphasized that the thrust of the work loss provision in all cases was to calculate loss based on actual earnings, not on future possibilities." *Gerardi v Buckeye Union Ins Co*, 89 Mich App 90, 94; 279 NW2d 588 (1979).

[112] *Popma*, 446 Mich at 472.

---

> [A] survivor's loss ... consists of a loss, after the date on which the deceased died, of contributions of tangible things of economic value, not including services, that dependents of the deceased at the time of the deceased's death *would have received for support during their dependency from the deceased if the deceased had not suffered the accidental bodily injury causing death and expenses* . . . .[113]

The decedent in that case died on the day that he completed his final requirements for a forestry degree from Michigan State University, had applied for forestry positions, was awarded a degree posthumously, and received what amounted to a job offer six months after he died.[114] The evidence presented also indicated that the decedent would have accepted the position. Thus, the evidence established that the decedent would have earned wages as an employee of the forestry service; but for his death, there was virtually nothing standing between the decedent and his earning the income at issue.[115] This Court concluded that it was not convinced that the trial court had made a mistake in finding that the deceased "would have been employed by the forestry service had he survived the accident."[116]

In *Swartout v State Farm Mut*, the Court of Appeals reversed the trial court's decision to dismiss a plaintiff's claim for work-loss benefits.[117] At the time of the accident, the plaintiff was to graduate from nursing school in two months, but because of

---

[113] *Gobler v Auto-Owners Ins Co*, 428 Mich 51, 60; 404 NW2d 199 (1987), citing MCL 500.3108(1) (emphasis altered).

[114] *Id*. at 55-57, 65-66.

[115] *Id*. at 65.

[116] *Id*. at 66.

[117] *Swartout v State Farm Mut*, 156 Mich App 350, 352; 401 NW2d 364 (1987).

her injuries, she was unable to complete what would have been her final semester.[118]  She was able to graduate the following year and obtain employment, but sought work-loss benefits because of the delay in her employment caused by the accident.[119]  The plaintiff submitted the following evidence: (1) an affidavit from her school stating that but for her being forced to withdraw due to the accident, she would have graduated on time and (2) an affidavit from a hospital stating that plaintiff would have been employed there no later than July 27, 1981, if she had received her degree on time, and identifying the rate of pay she would have received.[120]  The majority explained:

> [The] plaintiff . . . has alleged facts which, if believed, would establish the source of her employment, the exact date of employment and the exact wages that would have been received between July of 1981 and June of 1982.  In other words, plaintiff has stated a claim for wages that would, rather than could, have been earned but for her injuries.  We therefore conclude that plaintiff's claim should have survived defendant's motion for summary disposition.[121]

The Court of Appeals majority concluded that "whether plaintiff would have received income but for her injuries should be left to the trier of fact," as was the case in *Gobler*.[122]  Thus, when the evidence presented demonstrates that the wages at issue were inevitable but for the accident, a damages award based on such wages will not be barred as a matter of law on grounds of being contingent and speculative.

---

[118] *Id*. at 352.

[119] *Id*.

[120] *Id*.

[121] *Id*. at 354.

[122] *Id*. at 355.

Unlike the plaintiffs in *Gobler* and *Swartout*, however, plaintiff Hannay was not on the brink of graduating from her professional degree program—indeed, she had not yet been *accepted* into the dental hygienist program. Moreover, plaintiff Hannay's application for admission was rejected twice, once on its merits. Conversely, in *Gobler* and *Swartout*, the plaintiffs had satisfied nearly every condition to employment. Plaintiff's situation is more akin to that of the plaintiff in *Gerardi*, a Court of Appeals case in which the plaintiff sought work-loss benefits because of a one-year delay in her nursing school studies caused by injuries she incurred in an automobile accident.[123] The plaintiff still had one year of nursing school remaining at the time of her injury.[124] The Court concluded that "[a] fair reading of the complaint reveals that the plaintiff is in fact alleging a loss of wages she could have earned in the future as a registered nurse, but for the delay in her studies," i.e., loss-of-earning-capacity damages, reasoning, in part, that "plaintiff would not have been able to work as a registered nurse prior to her accident."[125]

Plaintiff Hannay ostensibly pleaded her claim for damages as a claim for work-loss damages as a dental hygienist, and the trial court purported to award such damages. This was error. The evidence presented did not establish by a preponderance of the evidence that but for the accident, plaintiff Hannay ultimately *would* have earned wages as a dental hygienist.

---

[123] *Gerardi*, 89 Mich App at 92-93.

[124] *Id*. at 95.

[125] *Id*.

In his deposition testimony, Mark Johnston (the dentist plaintiff worked for as a dental assistant) indicated that plaintiff was "destined to work in a dental office" and was "well on her way to getting into the [dental hygienist] program . . . ." Similarly, in her deposition testimony, Mary Johnston (a longtime dental hygienist who worked with plaintiff, who had been an instructor at the school where plaintiff applied, and who administered licensing exams for dentists and dental hygienists) testified that she thought plaintiff "absolutely . . . would have been admitted into the program." The Johnstons both indicated that they would have hired plaintiff as a hygienist in their office.

Clearly, the Johnstons were convinced that plaintiff Hannay would be successful in achieving her long-held dream of becoming a dental hygienist. The operative question here is not whether these witnesses were credible[126]—the operative question is *what exactly did the evidence presented demonstrate*? Did the evidence demonstrate that plaintiff Hannay *would* have earned wages as a dental hygienist but for her bodily injuries, or did it demonstrate merely that had she continued to apply herself and pursue the opportunity to become educated and licensed in that field she *could* have earned such wages, i.e., that she possessed a yet-unrealized potential for earning such wages?

We recognize that there is some degree of uncertainty inherent in work-loss awards generally,[127] but even assuming that the opportunity presented by the Johnstons

_____

[126] See MCR 2.613 (stating in part that "regard shall be given to the special opportunity of the trial court to judge the credibility of the witnesses who appeared before it").

[127] See *Voss v Adams*, 271 Mich 203, 205-206; 259 NW 889 (1935) (recognizing the natural uncertainty in damages inquiries generally, stating, "uncertain damages are not always speculative" and that "[t]here is a difference between certainty as to the existence or cause of an injury and as to the measure or extent of the damage. It is a recognized

39

did in fact constitute an offer of employment, the sheer number of conditions that were required to be satisfied before plaintiff could be employed by Dr. Johnston—namely, that plaintiff Hannay *would* have been accepted into the dental hygienist program, *would* have successfully completed the program, and *would* have passed the licensing exam—places this case outside the inherent uncertainty involved in work-loss claims.

We conclude that these unsatisfied conditions render the award of work-loss damages under the no-fault act contingent and speculative in this case and, therefore, barred under Michigan law to the extent that these damages were based on plaintiff's potential employment as a dental hygienist. In short, "it is too tenuous a proposition to say that the element of damages in dispute," namely, work-loss damages for loss of income as a dental hygienist, "is a legal and natural consequence of defendant's wrongful act."[128] The Johnstons' honestly held belief that plaintiff would have succeeded was simply not sufficient to prove that plaintiff would have satisfied the conditions necessary to earn wages as a dental hygienist, including the primary condition of being admitted into the dental hygienist program, a condition which neither they nor plaintiff had final control over. Accordingly, the facts as found by the trial court were not sufficient to satisfy the statutory language defining work-loss damages with respect to plaintiff's

rule that a wrongdoer will not go scot-free because his victim cannot prove his loss exactly. If the existence and cause of the injury are traced to a tort and damages are not susceptible of computation, the jury will allow such compensation as, under all the circumstances and in the exercise of sound conscience and good judgment, they shall deem just").

[128] *Sutter*, 377 Mich at 87.

claim of work loss as a dental hygienist, namely that plaintiff *would* have earned income as a dental hygienist *but for* the accident.

For these reasons, we reverse the Court of Appeals' decision to affirm plaintiff Hannay's work-loss damages award, and remand to the trial court for recalculation of the work-loss award consistent with this opinion.

## IV. CONCLUSION

In light of our holding that a plaintiff may bring a third-party tort action for both economic damages, such as work-loss damages, and noneconomic damages, such as pain and suffering or emotional distress damages, against a governmental entity if the requirements under MCL 500.3135 have been met, we affirm the *Hannay* panel's conclusion that work-loss benefits that exceed the statutory maximum are available against a governmental entity, and we reverse the *Hunter* panel's conclusion that noneconomic damages do not fall within the category of damages compensable under the motor vehicle exception and remand to the trial court for further proceedings consistent with this opinion. With regard to the second issue in *Hannay*, we reverse the portion of the Court of Appeals' opinion that affirms the work-loss damages award and remand to the trial court for recalculation of the work-loss award consistent with this opinion.

> Brian K. Zahra
> Robert P. Young, Jr.
> Stephen J. Markman
> Mary Beth Kelly
> Bridget M. McCormack
> David F. Viviano

CAVANAGH, J. I concur in the result only.

41