*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CLARENCE CHOICE,

UNPUBLISHED
March 13, 2025
10:38 AM

Plaintiff-Appellee,

v

No. 369019
Genesee Circuit Court
LC No. 2021-115849-NI

HOWARD EUGENE RICHARDS and SWARTZ
CREEK COMMUNITY SCHOOLS,

Defendants-Appellants.

Before: RIORDAN, P.J., and YATES and ACKERMAN, JJ.

PER CURIAM.

In the dead of winter, a vehicle driven by plaintiff, Clarence Choice, wound up stuck in the snow. An unidentified man in a black pickup truck stopped to see whether plaintiff needed help. Plaintiff accepted the offer, so the driver of the pickup truck entered the center lane and waited for the traffic to pass. A passing vehicle driven by defendant, Howard Eugene Richards (an employee of defendant, Swartz Creek Community Schools (SCCS)), saw the pickup truck moving. Richards then slammed on his brakes, lost control of his vehicle, and slid into plaintiff's vehicle. Plaintiff sued Richards and SCCS for injuries purportedly sustained in the collision. Defendants moved for summary disposition under MCR 2.116(C)(7) (governmental immunity) and (C)(10) (no genuine issue of material fact), but the trial court denied relief. On appeal, we conclude that the trial court erred in denying summary disposition to Richards under MCR 2.116(C)(7), but we affirm the trial court's denial of summary disposition to SCCS.

## I. FACTUAL BACKGROUND

This case arises from a collision that occurred on February 16, 2021, at the intersection of Maya Lane and Miller Road in the city of Swartz Creek. That section of Miller Road is a two-lane road with a center turn lane and a posted speed limit of 40 mph. Before the collision, plaintiff was driving his car on Maya Lane. His car became stuck in the snow approximately 15 feet from the intersection with Miller Road. Several minutes later, an unidentified man in a black pickup truck driving on Miller Road stopped just beyond Maya Lane to ask plaintiff if he needed help. Plaintiff accepted the offer, and, according to plaintiff, the black pickup truck then entered the center lane and waited for traffic to pass.

-1-

At the same time, Richards was driving a pickup truck on Miller Road towards Maya Lane. Richards was an employee of SCCS and was driving a school-district truck on his way back from plowing snow at a school parking lot. As Richards was driving on Miller Road at 39 mph, he saw the black pickup truck in the center turn lane. According to Richards, the black truck was moving in reverse toward Richards's vehicle. Richards explained that he was approximately 20 to 30 yards away from the black truck when it started to make a right turn. In response, Richards slammed on his brakes, lost control of his vehicle, and slid into plaintiff's car, which was still stuck in the snow on Maya Lane. According to plaintiff, the black truck was sitting stationary, waiting for traffic to clear, when Richards lost control of his vehicle.

Plaintiff went to McLaren Flint Medical Center the next day. The discharge summary from that hospital visit listed diagnoses of contusions, an elbow injury, facial and scalp contusions, and a knee sprain. Two days later, plaintiff returned to the hospital to undergo testing of his spine and left shoulder. Medical records from that visit indicate that plaintiff had been experiencing shoulder and neck pain since the accident three days earlier.

Approximately two weeks later, on March 3, 2021, plaintiff again returned to the hospital complaining of pain in his left shoulder. He underwent an MRI of his left shoulder, which revealed a posterior superior labrum tear and a large paralabral cyst. The records indicate that plaintiff had been experiencing "[s]evere pain since injury 2/16/2021." Five days later, plaintiff met with Dr. Louis N. Radden of Spine Specialists of Michigan for pain in his neck, back, left shoulder, left hip, and left knee. The records reflect that plaintiff "was involved in a car accident on 2/16/2021 as a result of the accident he developed Lower back, Neck, left shoulder, left hip and left knee pain." The record also states that plaintiff reported that that pain started the day of the accident, and that he denied any pain before the accident. Dr. Radden recommended a follow-up appointment with Dr. Jonathan K. Nzoma the next day "for evaluation and treatment of the right and left shoulder . . . will set him up for radical compression therapy of his left shoulder . . . ." Dr. Radden commented that this "treatment has been reasonable necessarily cause related to motor vehicle accident." That same day, Dr. Radden completed a work disability form for plaintiff "for injuries sustained in the aforementioned accident." After listing plaintiff's injuries, Dr. Radden stated that, "[a]s a result of the injuries received in this accident, i [sic] have disabled the patient from those activities that are checked off below . . . ." Such activities included employment, housework, and recreational activities.

Plaintiff saw Dr. Nzoma for the follow-up appointment on March 9, 2021, complaining of left shoulder and left knee pain. On April 7, 2021, Dr. Nzoma performed an "Arthroscopic SLAP (Superior Labrum, Anterior to Posterior) Lesion Repair" on plaintiff's left shoulder.[1] Plaintiff then met again with Dr. Nzoma on April 20, 2021, and he was prescribed physical therapy. The medical records indicate that plaintiff was next seen for his left-shoulder injury a month later, on May 18, 2021. In the meantime, he continued to attend follow-up appointments for other injuries he asserts were sustained in the collision. Describing the appointment on May 18, 2021, Dr. Nzoma reported

---

[1] The medical records for that procedure state that it was performed on plaintiff's *right* shoulder. The lower-court record strongly suggests that this was written in error, and that the procedure was performed on plaintiff's left shoulder.

that plaintiff initially did well following the procedure, but he started having worsening pain in his left shoulder. Plaintiff had follow-up appointments with Dr. Nzoma for left-shoulder pain in both August and September 2021, and he had another procedure on his left shoulder on October 6, 2021.

On June 22, 2023, plaintiff took part in an independent medical evaluation conducted by Dr. Jeffrey Lawley, who determined that plaintiff did not suffer any significant injury to his left shoulder in the collision because he did not complain of such an injury at the time of the collision. Dr. Lawley further opined that the labral tear with a large paralabral cyst revealed by the March 3, 2021, MRI was "clearly indicative" that those injuries predated the February 16 accident.

Plaintiff sued both defendants on June 29, 2021, alleging negligence and gross negligence.[2] Defendants moved for summary disposition under MCR 2.116(C)(7) and (C)(10) on several bases. Defendants claimed they were entitled to summary disposition under (C)(10) because (1) plaintiff was more than 50% at fault, (2) the sudden emergency doctrine barred liability, (3) Richards was not the proximate cause of the accident, and (4) plaintiff failed to establish any threshold injury. Defendants also invoked governmental immunity and requested summary disposition under (C)(7) because Richards did not act grossly negligently and the motor vehicle exception to governmental immunity did not apply. On November 21, 2023, the trial court ruled from the bench that neither defendant was entitled to summary disposition because there remained genuine issues of material fact. The trial court memorialized its decision in a written order issued on December 7, 2023. This appeal followed.

## II. LEGAL ANALYSIS

On appeal, defendants argue that the trial court erred by denying their motion for summary disposition. Defendants insist the trial court should have awarded summary disposition pursuant to MCR 2.116(C)(7) and governmental immunity because (1) Richards was not grossly negligent and (2) the motor vehicle exception to governmental immunity does not apply. Defendants further claim the trial court should have awarded summary disposition under MCR 2.116(C)(10) because (1) the sudden emergency doctrine applies, (2) Richards was not the proximate cause of the crash, and (3) plaintiff was more than 50% at fault for the crash.[3] We will address these issues in turn.

---

[2] Plaintiff also asserted claims of negligent operation of a governmental vehicle and a violation of the owner liability statute, but those claims were later withdrawn.

[3] Although defendants have contested the trial court's rulings under MCR 2.116(C)(7) and (C)(10), there may be a jurisdictional problem with their attempt to seek review of the (C)(10) decisions in an interlocutory appeal of right. This Court has jurisdiction "to review the trial court's sovereign-immunity holding" rendered under MCR 2.116(C)(7), *Hart v Michigan*, 506 Mich 857, 860 (2020) (CLEMENT, J., concurring), but defendants cannot claim an interlocutory appeal of right from the denial of summary disposition under (C)(10). *Id*. at 861. Defendants did not file an application for leave to appeal the trial court's denial of summary disposition under (C)(10), so they have not provided any basis for interlocutory review of the (C)(10) decisions. *Id*. at 861-862. This Court, however, has often addressed this situation by treating the claim of appeal of right as an application

-3-

A. SUMMARY DISPOSITION UNDER MCR 2.116(C)(7)

This Court reviews "de novo a trial court's determination regarding a motion for summary disposition." *Odom v Wayne Co*, 482 Mich 459, 466; 760 NW2d 217 (2008). According to MCR 2.116(C)(7), the defendant "is entitled to summary disposition if the plaintiff's claims are barred because of immunity granted by law . . . ." *Id*. (quotation marks omitted). When this Court reviews "a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff, unless other evidence contradicts them." *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). And whenever "any affidavits, depositions, admissions, or other documentary evidence are submitted, the court must consider them to determine whether there is a genuine issue of material fact." *Id*. at 429. "If no facts are in dispute and if reasonable minds could not differ regarding the legal effect of those facts, the question whether the claim is barred is an issue of law for the court." *Id*.

1. GROSS NEGLIGENCE

Defendants insist Richards is entitled to governmental immunity and summary disposition under MCR 2.116(C)(7) because he was not grossly negligent. As an employee of a governmental agency, Richards has immunity "from tort liability for an injury to a person or damage to property caused by the . . . employee . . . while in the course of employment" if his conduct did "not amount to gross negligence that is the proximate cause of the injury or damage." MCL 691.1407(2)(c). Gross negligence requires "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). "Evidence of ordinary negligence is not enough to establish a material question of fact regarding whether a government employee was grossly negligent." *Wood v Detroit*, 323 Mich App 416, 423-424; 917 NW2d 709 (2018) (quotation marks and citation omitted). Furthermore, "alleging that an actor could have done more is insufficient under Michigan law, because, with the benefit of hindsight, a claim can always be made that extra precautions could have influenced the result." *Id*. at 424 (quotation marks and citation omitted). Indeed, gross negligence "suggests almost a willful disregard of precautions or measures to attend to safety and a singular disregard for substantial risks." *Id*. (quotation marks and citation omitted). "[Q]uestions regarding whether a governmental employee's conduct constituted gross negligence are generally questions of fact for the jury," *id*., but "if reasonable minds could not differ, summary disposition may be granted." *Id*.

The parties agree that SCCS is a governmental agency, that Richards was an employee of that agency, and that Richards was engaged in a governmental function at the time of the accident. They simply dispute whether Richards's actions amounted to gross negligence. The evidence that was presented to the trial court established that Richards was traveling 39 miles per hour when he slammed on the brakes and lost control of his vehicle. Under normal conditions, that would not be described as grossly negligent conduct. But we must analyze whether the conditions Richards faced at the time of the collision create a genuine issue of material fact regarding gross negligence. Plaintiff testified that there was a lot of snow on the roads, but he also said that he was able to see

for leave to appeal and then granting it "in order to reach the legal questions presented in the name of judicial economy." *Id.* at 863 & n 10. We will do so here despite the jurisdictional concerns.

-4-

some concrete on Miller Road and there was salt on the road. Similarly, Richards testified that the roads were "probably a little wet," but there "wasn't any buildup" and he "thought the conditions were fine."

The evidence, viewed in the light most favorable to plaintiff, shows there was little, if any, snow on that section of Miller Road. Reasonable minds could not find that the condition of Miller Road at the time of the collision was so treacherous that Richards's driving just under the speed limit amounted to "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). That evidence could have given rise to a genuine issue of material fact regarding ordinary negligence, but it is insufficient to establish a genuine issue of material fact concerning gross negligence. See *Wood*, 323 Mich App at 423-424. Therefore, the trial court erred when it denied summary disposition to Richards under MCL 2.116(C)(7).

## 2. THE MOTOR VEHICLE EXCEPTION

Defendants contend that SCCS is immune from liability because plaintiff failed to establish the elements of the motor vehicle exception to governmental immunity. Specifically, defendants insist plaintiff failed to establish the threshold injury needed to invoke the motor vehicle exception, so the trial court should have granted summary disposition to SCCS.[4] Governmental agencies are "immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). One exception to governmental immunity, known as the motor vehicle exception, *Hannay v Dep't of Transp*, 497 Mich 45, 50; 860 NW2d 67 (2014), states that "[g]overnmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner[.]" MCL 691.1405. "[T]he restrictions on damages recoverable in third-party tort actions involving motor vehicle accidents set forth in MCL 500.3135 of the no-fault act, MCL 500.3101 *et seq*., apply to cases permitted by the waiver of governmental immunity provided for in the motor vehicle exception." *Hannay*, 497 Mich at 51. Consequently, "a plaintiff may bring a third-party tort action for economic damages, such as work-loss damages, and noneconomic damages, such as pain and suffering or emotional distress damages, against a governmental entity if the requirements of MCL 500.3135 have been met." *Id*.

Under MCL 500.3135, a person is subject to tort liability for noneconomic loss caused by use of a motor vehicle if the injured person suffered "death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). "Serious impairment of body function" means an impairment that (1) "is objectively manifested, meaning it is observable or perceivable from actual symptoms or conditions by someone other than the injured person," (2) "is an impairment of an important body function, which is a body function of great value, significance, or consequence to the injured person," and (3) "affects the injured person's general ability to lead his or her normal life, meaning it has had an influence on some of the person's capacity to live in his or her normal manner of living." MCL 500.3135(5)(a)-(c). The effect on the injured person's capacity to lead a normal life "is inherently fact and circumstance specific to each injured person,

---

[4] Defendants have raised the issue of threshold injury in two separate arguments in their appellate brief, but we need not provide two separate analyses in response to those separate arguments.

must be conducted on a case-by-case basis, and requires comparison of the injured person's life before and after the incident." MCL 500.3135(5)(c).

The "proper inquiry is whether the *impairment* is objectively manifested, not the *injury* or its symptoms." *McCormick v Carrier*, 487 Mich 180, 197; 795 NW2d 517 (2010). "Although mere subjective complaints of pain and suffering are insufficient to show impairment, evidence of a physical basis for that pain and suffering may be introduced to show that the impairment is objectively manifested." *Patrick v Turkelson*, 322 Mich App 595, 607; 913 NW2d 369 (2018).

Here, defendants insist that plaintiff failed to establish that, as a result of the accident, he suffered a threshold injury under MCL 500.3135, i.e., a serious impairment of body function. As a result, they argue that the motor vehicle exception does not strip them of the immunity provided under MCL 600.1407(1). Defendants do not contest that plaintiff's left-shoulder injury constituted a serious impairment of body function. Instead, they assert that there is no evidence that that injury was caused by the collision. In response to defendants' motion for summary disposition, plaintiff submitted medical records to the trial court in support of his argument that he sustained a threshold injury in the crash.[5] The records show that plaintiff presented at the hospital on February 17, 2021, the day after the accident. The records of that hospital visit do not indicate any complaints related to plaintiff's left shoulder.

The first mention of a left-shoulder injury came three days after the accident, when plaintiff returned to the hospital complaining of shoulder pain and other issues. From that point forward, the records reflect that plaintiff consistently complained of left-shoulder pain, that an MRI of his left shoulder revealed that he had a tear of the posterior superior labrum as well as a large paralabral cyst, and that he ultimately underwent two procedures on that shoulder. The medical records state with regularity that this pain began on the date of the collision. Although the medical records are not entirely clear, there are several points in those records where the injuries are attributed to the collision.

Defendants offered records from Dr. Lawley's independent medical evaluation of plaintiff that occurred in June 2023. Dr. Lawley concluded that plaintiff did not injure his left shoulder in the collision. The first basis for his opinion was that the records did not reflect any documented complaints of left-shoulder pain at the time of the collision. Second, Dr. Lawley based his opinion on his belief that the findings of the March 3, 2021 MRI, i.e., a labral tear with a large paralabral

---

[5] Defendants assert that plaintiff improperly attempted to expand the record. This Court's review is limited to the documents which appear in the lower court record, and a party may not expand the record on appeal. *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002). Therefore, our review of this issue is limited to those documents which are contained in the lower court record.

Defendants claim that the only medical records that appear in the lower court record are the records for the medical visits on February 17, March 3, March 8, March 9, and April 7. But defendants overlook the fact that the lower court record contains addition medical records that defendants themselves submitted to the lower court as exhibits to their motion for summary disposition.

cyst, "would be clearly indicative that the labral tear would have predated his February 16, 2021 motor vehicle accident." Dr. Lawley seems to have concluded that plaintiff did not have an injury to his left shoulder when he went to the hospital after the collision, but he already had a labral tear in his left shoulder before the accident occurred. In our view, the independent medical examination merely reflects conflicts among the medical records plaintiff offered, and such conflict renders the award of summary disposition inappropriate. The medical records show consistent complaints of left-shoulder pain with the first documented complaint made within three days of the collision, and aside from Dr. Lawley's opinion, nothing in the records suggests that plaintiff had a pre-existing left-shoulder injury or suffered such an injury after the collision. Therefore, at the very least, those records establish a genuine issue of fact whether plaintiff's left-shoulder injury was caused by the collision.

## B. SUMMARY DISPOSITION UNDER MCR 2.116(C)(10)

Defendants sought summary disposition under MCR 2.116(C)(10), arguing that regardless of whether they had immunity from liability for plaintiff's claims, they were entitled to summary disposition. Summary disposition should be awarded under MCR 2.116(C)(10) whenever "there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." A motion for summary disposition under MCR 2.116(C)(10) "tests the *factual sufficiency* of a claim." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). The "trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *Id*. A genuine issue of material fact exists when " 'the record leaves open an issue upon which reasonable minds might differ.' " *Id*. The trial court is not entitled to "weigh the evidence or make determinations of credibility when deciding a motion for summary disposition." *Patrick*, 322 Mich App at 605 (quotation marks and citation omitted). Whenever "the evidence before [the trial court] is conflicting, summary disposition is improper." *Id*. at 605-606 (emphasis omitted).

## 1. SUDDEN EMERGENCY

Defendants contend that they are shielded from liability by the sudden emergency doctrine, so they challenge the trial court's refusal to award summary disposition to them on that basis. "The sudden-emergency doctrine is a logical extension of the 'reasonably prudent person' standard," so the trial court must determine "whether the defendant acted as a reasonably prudent person when facing the emergency, giving consideration to all the circumstances surrounding the accident." *White v Taylor Distrib Co, Inc*, 275 Mich App 615, 622; 739 NW2d 132 (2007), aff'd 482 Mich 136 (2008). Under the doctrine, a person "who suddenly finds himself in a place of danger, and is required to act without time to consider the best means that may be adopted to avoid the impending danger is not guilty of negligence if he fails to adopt what subsequently and upon reflection may appear to have been a better method, unless the emergency in which he finds himself is brought about by his own negligence." *Id*. (quotation marks and citation omitted). In order to invoke "the sudden-emergency doctrine, the circumstances surrounding the accident must present a situation that is unusual or unsuspected." *Id*. Moreover, the danger must not have "been in clear view for any significant length of time[.]" *Id*. (quotation marks and citation omitted; alteration in original). "[W]hen a person faces a sudden emergency, it does not create an invitation to act in a negligent manner." *Id*. at 623.

Here, defendants contend that Richards encountered a sudden emergency when the black truck suddenly turned in front of Richards's vehicle. They insist that it was this sudden emergency that caused Richards to lose control of his vehicle and run into plaintiff's car. But genuine issues of material fact exist as to whether a sudden emergency was presented and whether, if there was a sudden emergency, Richards's response to that potential peril was that of a reasonably prudent person. See *id*. at 622.

Richards testified at his deposition that, as he was driving on Miller Road, he saw the black pickup truck in the center turning lane, and it was backing up towards him. Richards testified that he kept going because he thought the truck was "staying there," but he also testified that he "did not know where [the truck] was backing up to go[.]" Eventually, the truck stopped going backward and began moving forward. When Richards was 20 to 30 yards away, the truck turned in front of him "abruptly" and "unexpectedly," but its movement "wasn't extremely fast." Richards further testified that the truck never actually entered his lane, and instead remained in the center lane. In response, Richards "broke hard," and ended up swerving. Richards did not recall if the truck had a turn signal on. Conversely, plaintiff testified that he saw the truck remain motionless as it waited for traffic to pass.

Given the conflicting testimony, there is a genuine issue of material fact whether there was a sudden emergency—i.e., whether the movement of the black truck, or lack thereof, constituted a sudden emergency—and whether Richards's reaction to "jam[] on the breaks," which caused him to lose control of his vehicle, was that of a reasonably prudent person. Resolution of those issues likely hinges on minor details in the movement of the black truck and the timing of that movement. The lower-court record does not sufficiently establish those details in a manner that would enable the trial court to decide that, as a matter of law, Richards faced a sudden emergency to which he responded in a non-negligent manner. Moreover, there is a genuine issue of material fact whether Richards was negligent in driving just under the speed limit given the road conditions, and whether that purported negligence brought about the sudden emergency.

## 2. PROXIMATE CAUSE

Defendants also assert that, on the existing record, reasonable minds could not differ in the conclusion that Richards's negligence was not the proximate cause of the accident. Consequently, defendants contend that the trial court should have awarded them summary disposition because of the failure to establish proximate cause. "Proximate causation is a required element of a negligence claim." *Patrick*, 322 Mich App at 616. Causation is typically reserved for the trier of fact unless there is no dispute of material fact. *Id*. To establish proximate cause, the plaintiff must prove both "cause in fact and legal cause." *Id*. (quotation marks and citation omitted). To prove cause in fact, the plaintiff must "present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Id*. at 617 (quotation marks and citation omitted). For legal cause, the plaintiff must prove "that it was foreseeable that the defendant's conduct may create a risk of harm to the victim, and . . . [that] the result of that conduct and intervening causes were foreseeable." *Id*. (alteration in original).

"[I]t is well-established that there can be more than one proximate cause contributing to an injury." *O'Neal v St John Hosp & Med Ctr*, 487 Mich 485, 496-497; 791 NW2d 853 (2010). The negligence "must be 'a proximate cause' not 'the proximate cause.' " *Id*. at 497. If "a number of

-8-

factors contribute to produce an injury, one actor's negligence will not be considered a proximate cause of the harm unless it was a substantial factor in producing the injury." *Brisboy v Fibreboard Corp*, 429 Mich 540, 547; 418 NW2d 650 (1988).

Here, defendants' argument that Richards's negligence was not the proximate cause of the accident focuses largely on plaintiff's actions, i.e., operating the car without a driver's license and causing the car to become stuck in the snow which resulted in the black truck coming to plaintiff's aid. First, it is unclear how the fact that plaintiff was operating a vehicle without a driver's license has any bearing on whether Richards's alleged negligence was a proximate cause of the accident. Defendants' argument also ignores the fact that there can be more than one proximate cause of an injury. See *O'Neal*, 487 Mich at 496-497. Even if plaintiff or the driver of the black truck acted negligently and the negligence was a proximate cause of the collision, Richards's negligence could also be a proximate cause of the crash if it was a substantial factor in bringing about the collision. See *Brisboy*, 429 Mich at 547. Genuine issues of material fact remain as to whether Richards was driving too fast for conditions and whether that was a proximate cause of the collision. Therefore, the trial court correctly denied summary disposition on that issue.

3. COMPARATIVE NEGLIGENCE

Finally, defendants argue that the trial court should have granted summary disposition to them because the evidence revealed that plaintiff was at least 50% at fault, so his claim was barred under the doctrine of comparative fault. Under MCL 500.3135(2)(b), "Damages must be assessed on the basis of comparative fault, except that damages must not be assessed in favor of a party who is more than 50% at fault." "Comparative negligence is an affirmative defense." *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 98; 485 NW2d 676 (1992). "Under this doctrine, a defendant may present evidence of a plaintiff's negligence in order to reduce liability[,]" *id*., and "[t]he standards for determining the comparative negligence of a plaintiff are indistinguishable from the standards for determining the negligence of a defendant . . . ." *Rodriguez v Solar of Mich, Inc*, 191 Mich App 483, 488; 478 NW2d 914 (1991). Accordingly, "the question of a plaintiff's own negligence for failure to use due care for his own safety is a jury question unless all reasonable minds could not differ or because of some ascertainable public policy consideration." *Id*.

The facts on which defendants rely—plaintiff was driving an unfamiliar vehicle in snowy conditions and without a driver's license—do not demonstrate as a matter of law that plaintiff was more than 50% at fault for the accident. Further, whether a violation of a statute was a proximate cause of an accident is for the jury to determine. See *id*. Moreover, the fact that there is evidence Richards was driving under the speed limit is not dispositive of his negligence. Therefore, the trial court did not err when it left the determination of comparative negligence to the trier of fact.

To summarize, we reverse the trial court's order denying summary disposition to Richards under MCR 2.116(C)(7), we affirm the trial court's denial of summary disposition to SCCS under MCR 2.116(C)(7) and (10), and we remand the case for further proceedings solely against SCCS. We do not retain jurisdiction.

/s/ Michael J. Riordan
/s/ Christopher P. Yates
/s/ Matthew S. Ackerman