*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WILLIE L. FAISON,

Plaintiff-Appellee,

v

CITY OF HIGHLAND PARK MICHIGAN,

Defendant-Appellant.

UNPUBLISHED
February 17, 2026
11:23 AM

No. 373581
Wayne Circuit Court
LC No. 23-010510-CB

Before: RICK, P.J., and YATES and MARIANI, JJ.

PER CURIAM.

Defendant, the City of Highland Park ("the City"), appeals by right the trial court's order partially denying its motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

This case arose from plaintiff's 2021 purchase of a dump truck for the City's use while he was employed by the City. Plaintiff testified that in January 2016, he began working as the Director of the City's Department of Public Works (DPW), which required him, in relevant part, to maintain all the City's streets and to manage the associated funds appropriately. As part of his duties, plaintiff provided a report to the City's Mayor in September 2018 indicating that the City needed at least two new dump trucks to continue to provide adequate street-clearing services, particularly in the winter months, as the City only had two completely inoperable trucks and another that needed to be replaced due to its age. To compensate for these equipment issues, the City contracted with a private company for emergency snow plowing and removal services, but that company stopped providing services to the City in November or December 2020, which left the City with only one, partially functional truck outfitted with a snow plow to maintain all the City's streets.

Plaintiff testified that in February 2021, the Mayor instructed him to search for a new dump truck for the City and informed him that if he found a suitable one that was $10,000 or less, the City's Director of Finance would issue a check to pay for it as an "emergency purchase." Plaintiff thereafter attended an auction, where he was outbid on a 2008 dump truck outfitted with a snow

plow but was able to procure a similarly outfitted 2003 dump truck for $9,780. Plaintiff returned to the auction house the next day with a check for $9,780 issued by the City's Director of Finance, paid for the truck, signed the title directly over to the City, and drove off the lot.

Plaintiff testified that, a few days later, he received a call from the auction house offering him a second chance to buy the 2008 truck, as the highest bidder never completed the purchase. Plaintiff informed the Mayor that the City could purchase the 2008 truck for $10,845 and offered to cover the cost with his own personal funds at that time, so long as he could get reimbursed by the City for the purchase. The Mayor assured plaintiff that the City would reimburse him if he purchased the 2008 truck and so, a few days later, plaintiff returned to the auction house with a cashier's check from his credit union, purchased the truck, signed the title directly over to the City, and drove the truck to work for future use. Plaintiff also immediately delivered the truck's title to the City's Director of Finance, who then added the truck to the City's insurance policy.

Plaintiff further testified that, after several months went by without any reimbursement from the City, he spoke to the Director of Finance about the situation and, in February 2022, submitted all the relevant receipts and a request for reimbursement to the City's finance department. Over the ensuing months, plaintiff's request was repeatedly returned to him, so after speaking to one of the City's attorneys, he submitted the same request and documentation to the City's legal department. Plaintiff also submitted to the legal department a copy of a letter, which the Mayor had apparently signed,[1] explaining the situation and indicating that plaintiff was to be reimbursed from the City's emergency funds for his purchase of the 2008 truck. By November 2022, plaintiff still had not been reimbursed, so he reached out to the City's Purchase Director, who then assisted plaintiff in drafting a resolution for reimbursement to present to the City Council for approval. The Purchase Director testified that, pursuant to protocol, he submitted the resolution to the City's attorney, but he never heard back about the status of the resolution or otherwise saw or heard anything indicating that the legal department had given it to the City Council.

Plaintiff testified that he left his position as the Director of the DPW on December 31, 2022, without having been reimbursed. The City was still regularly using the 2008 truck at that time. Despite having left his position, plaintiff continued to communicate with the City's legal department about obtaining reimbursement, but to no avail.

In August 2023, plaintiff filed a complaint against the City, alleging, in relevant part, claims of promissory estoppel and unjust enrichment in relation to his purchase of the 2008 truck.[2] Specifically, plaintiff alleged that the Mayor, on the City's behalf, promised to reimburse plaintiff for his purchase of the 2008 truck, but the City failed to ever do so despite its continued retention

---

[1] Plaintiff provided an unsigned copy of the letter during the proceedings below, explaining that he had given the only signed copy to the City's legal department.

[2] Plaintiff also alleged claims of breach of contract, reimbursement for value of stolen personal property, common-law conversion, and statutory conversion. The parties ultimately stipulated to the dismissal of those claims, and they are not at issue in this appeal.

and use of the truck. In response, the City filed an answer generally denying plaintiff's allegations.[3]

The City subsequently filed a motion for summary disposition under MCR 2.116(C)(10). The City argued that the promissory-estoppel claim, despite plaintiff's labeling of it, actually constituted a negligence claim, and there was "no genuine issue of material fact regarding Plaintiff's ability to establish a negligence tort claim." According to the City, the Mayor was not authorized to make a promise on the City's behalf to reimburse plaintiff for his purchase of the 2008 truck because the City's ordinances required all contracts and purchases of $4,000 or more to first be approved by the City Council, and the City could not be held liable as a governmental agency for the Mayor's unauthorized, tortious acts. Regarding plaintiff's unjust-enrichment claim, the City conceded that it had kept the truck, but it argued that it had not done so over plaintiff's objection and that plaintiff had never attempted to retrieve the truck from the City or sell it to recoup his personal funds. As evidentiary support for its motion, the City attached transcripts from the depositions of plaintiff, the City's Purchase Director, and the City's Finance Director, as well as excerpts from the City's Charter and Ordinances.

Plaintiff responded that the City's motion for summary disposition should be denied because there were "material facts in dispute as to [his] claims of promissory estoppel and unjust enrichment[.]" As to promissory estoppel, plaintiff argued that the City had provided no legal or factual support for its position that this claim actually amounted to a negligence claim. And, according to plaintiff, he could maintain this claim against the City based on the Mayor's promise of reimbursement because the purchase of the 2008 truck, although over $4,000, had been "designated as an emergency purchase" by the Mayor and thus did not require prior approval by the City Council. As to unjust enrichment, plaintiff argued that ample facts supported the elements of the claim, and the City had offered no legal basis for the notion that the claim must nonetheless fail because plaintiff did not object to the City's retention of the truck or attempt to retrieve the truck or sell it to recoup his personal funds. As his own evidentiary support, plaintiff provided, in relevant part: (1) transcripts from the depositions of himself and the City's Purchase Director; (2) the 2018 report from plaintiff to the Mayor detailing the City's need for new trucks; (3) receipts associated with his purchase of the 2008 truck; (4) the application for title and registration related to the 2008 truck; (5) the title for the 2008 truck in the City's name; (6) plaintiff's February 2022 request for reimbursement submitted to the City's legal department; (7) an unsigned copy of the letter that plaintiff provided to the Mayor and the legal department when requesting reimbursement; (8) plaintiff's email communications with the Purchase Director regarding the resolution for reimbursement; (9) the resolution for reimbursement submitted to the City's legal department by the Purchase Director; and (10) excerpts from the City's Charter and Ordinances.

In reply, the City generally reiterated the arguments it had set forth in its motion for summary disposition. The City further argued, however, that because plaintiff's promissory-estoppel claim was actually a tort claim of negligence, it was subject to governmental immunity under the Government Tort Liability Act (GTLA), MCL 691.1401 *et seq*. The City also noted

---

[3] Pursuant to the parties' stipulation, plaintiff filed an amended complaint in April 2024 to restate his unjust-enrichment claim. Defendant thereafter filed an amended answer in response.

that, although it still owned and retained the truck, the truck had become inoperable and plaintiff was free to pick it up at any time.

The trial court held a hearing on the City's motion, at which the parties argued consistently with their briefs. Following the parties' oral arguments, the trial court denied the City's motion for summary disposition as to plaintiff's promissory-estoppel and unjust-enrichment claims. The court rejected defendant's argument that plaintiff's promissory-estoppel claim was actually a negligence claim subject to governmental immunity, emphasizing that the City "cite[d] no binding case law in support of this proposition" and that plaintiff had clearly pleaded the essential elements of a promissory-estoppel claim rather than a negligence claim. The court also found that plaintiff's offered proofs demonstrated that there was a genuine issue as to whether plaintiff's reliance on the Mayor's promise of reimbursement for his purchase of the 2008 truck was reasonable because the Mayor had, just days earlier, "authorized the emergency purchase of the 2003 dump truck, for $9,780, which did not require the approval of the [C]ity [C]ouncil." The court further found that plaintiff's offered proofs demonstrated a genuine issue as to whether defendant was unjustly enriched by its retention of the 2008 truck because it was undisputed that "plaintiff purchased and titled [the truck] over to" the City, that the City "retained and regularly used the dump truck" since plaintiff's purchase of it, and that the City "continue[d] to have the truck in its name and retain[ed] it." The trial court thereafter issued an order denying the City's motion on these bases. This appeal followed.

## II. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Bartalsky v Osborn*, 337 Mich App 378, 382; 977 NW2d 574 (2021). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a claim, and it is "properly granted when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Cantina Enterprises II Inc v Property-Owners Ins Co*, 349 Mich App 682, 689; ___ NW3d ___ (2024). All evidence submitted by the parties must be viewed "in the light most favorable to the party opposing the motion," *id*. at 690, and "shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion," MCR 2.116(G)(6). A genuine issue of material fact does not exist unless "the record leaves open an issue upon which reasonable minds might disagree." *Green v Pontiac Pub Library*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363459); slip op at 7.

## III. DISCUSSION

On appeal, the City argues that the trial court erred by denying its motion under MCR 2.116(C)(10) because the substance of plaintiff's promissory-estoppel and unjust-enrichment claims actually constituted claims of tortious negligence. According to the City, because plaintiff's claims sound in tort, they fall within the scope of the GTLA, which grants the City immunity for tort liability. We agree with the City that the GTLA generally immunizes governmental agencies engaged in a governmental function from tort liability, unless an enumerated statutory exception applies. *McLean v Dearborn*, 302 Mich App 68, 73; 836 NW2d 916 (2013); see also MCL 691.1407(1)-(2). We agree with the trial court, however, that defendant cannot avail itself of such immunity here. Plaintiff's promissory-estoppel and unjust-enrichment claims both sound in

-4-

contract, not tort, and therefore do not fall within the purview of the GTLA. *Wilcoxon v Wayne Cty Neighborhood Legal Servs*, 252 Mich App 549, 552-553, 555; 652 NW2d 851 (2002); see also MCL 691.1407(1)-(2).

On appeal, the City offers nothing to explain how the substance of plaintiff's unjust-enrichment claim actually amounts to a negligence claim. The City also largely fails to explain as much with respect to plaintiff's promissory-estoppel claim, asserting only that plaintiff, when alleging promissory estoppel in his complaint, used the phrase "as a direct and proximate result," which is language typically associated with a negligence claim. But the City fails to show—and we fail to see—how the mere use of such language, alone, would somehow transform plaintiff's promissory-estoppel claim into one of negligence, particularly in light of the other language used throughout the complaint. Indeed, in pleading his promissory-estoppel claim, plaintiff alleged that the Mayor made an "unconditional promise" on the City's behalf to reimburse him for his purchase of the 2008 truck, that the City "has failed and refused to fulfill [that] promise," and that plaintiff suffered "significant financial loss" as a result of his reliance on that promise. Such language clearly pleads the elements necessary to sustain a promissory-estoppel claim. See *Cove Creek Condo Ass'n v Vistal Land & Home Dev, LLC*, 330 Mich App 679, 713; 950 NW2d 502 (2019). In contrast, plaintiff made no mention of any duty owed by the City or the Mayor—an element necessary to sustain a negligence claim. See *Hannay v MDOT*, 497 Mich 45, 63; 860 NW2d 67 (2014). Plaintiff's claims plainly sound in contract and we, like the trial court, find no merit in the City's attempt to recast them as tort claims and seek immunity from them.

The City also argues that, even if the trial court did not err in this regard, the court nonetheless erred by denying its motion under MCR 2.116(C)(10) because there was no genuine issue of material fact regarding either of plaintiff's claims. We disagree.

To maintain his promissory-estoppel claim, plaintiff must demonstrate that there was "(1) a promise, (2) that the promisor should have reasonably expected to induce action of a definite and substantial character on the part of the promisee, and (3) that in fact produced reliance of that nature in circumstances such that the promise must be enforced if injustice is to be avoided." *Cove Creek*, 330 Mich App at 713 (quotation marks and citations omitted). On appeal, defendant concedes that "there is a question of whether there was a promise [made] to [p]laintiff," but argues there is no genuine issue of material fact that plaintiff's reliance on any such promise was unreasonable.

The parties' arguments on this point are essentially the same as those raised before the trial court, and we agree with that court's ultimate disposition of them. In arguing that it was unreasonable for plaintiff to rely on the Mayor's promise of reimbursement, the City cited provisions of the City's Charter and Ordinances stating that all contracts and purchases of $4,000 or more must first be approved by the City Council. The City asserted that, in light of these provisions, the Mayor did not have the authority to make a promise of reimbursement on the City's behalf given that the cost of the truck well exceeded $4,000—and plaintiff made clear in his deposition testimony that he was aware of these provisions at the time he purchased the 2008 truck. Accordingly, plaintiff could not have reasonably relied on the Mayor's promise.

In arguing otherwise, plaintiff cited other provisions of the City's Charter and Ordinances stating that plaintiff, as the Director of the DPW, was under the Mayor's supervision and that the

Mayor was authorized to act in such a way that ensured the efficient administration of all departments under his supervision, including through emergency purchases. Thus, although the purchase of the 2008 truck was over $4,000, the Mayor did not require the City Council's approval before making a promise of reimbursement for what he had deemed "an emergency purchase" for the City. To further substantiate that position and plaintiff's reasonable reliance on the Mayor's promise, plaintiff put forth evidence that, shortly before the purchase of the 2008 truck, the Mayor had authorized plaintiff, as the Director of the DPW, to purchase the 2003 truck at an auction for the City's use with the City's emergency funds, and the City did, in fact, pay $9,780 for the 2003 truck the next day with money from those funds—all without first seeking the City Council's approval. Plaintiff's evidence also established that: (1) plaintiff purchased the 2008 truck with his own personal funds after the Mayor instructed him to do so and promised him that he would get reimbursed; (2) the 2008 truck was titled over to the City and added to the City's insurance policy immediately after plaintiff's purchase of it; (3) the City regularly used both trucks for plowing and removing snow, debris pick-up, and blight removal since plaintiff's purchase of them; (4) the City still owned and possessed the 2008 truck; and (5) plaintiff repeatedly attempted to get reimbursed through various means, all to no avail. As the trial court correctly surmised, all of this was, at minimum, sufficient to demonstrate the existence of a genuine issue of material fact as to whether plaintiff reasonably relied on a promise of reimbursement from the Mayor in purchasing the 2008 truck for the City's use.

The City's argument regarding plaintiff's unjust-enrichment claim is equally unavailing. To maintain his unjust-enrichment claim, plaintiff must demonstrate that (1) the City received a benefit from plaintiff, and (2) "an inequity result[ed] to plaintiff from [the City's] retention of the benefit." *Bellevue Ventures, Inc v Morang-Kelly Inv*, 302 Mich App 59, 64; 836 NW2d 898 (2013). The City argues, as it did below, that there was no genuine issue of material fact as to whether it was unjustly enriched because plaintiff never objected to its continued possession of the truck and never attempted to retrieve the truck or sell it to recoup his lost personal funds. But as the trial court duly noted at the motion hearing, these are not elements plaintiff must prove to maintain his unjust-enrichment claim. See *id*. And, as discussed, plaintiff's offered proofs established that: (1) plaintiff purchased the 2008 truck with personal funds; (2) the truck was titled over to the City and added to the City's insurance policy immediately after purchase; (3) the City regularly used the truck for years; (4) the City never paid for the truck, despite plaintiff's repeated attempts to get reimbursed for it; and (5) the City still owns and possesses the truck. We, like the trial court, fail to see how these proofs were insufficient to create a genuine issue of material fact regarding whether the City was unjustly enriched by its retention of the 2008 truck purchased by plaintiff. See *id*. at 64-65.

In sum, we discern no error in the trial court's decision to deny defendant's motion for summary disposition regarding plaintiff's promissory-estoppel and unjust-enrichment claims.

Affirmed.

/s/ Michelle M. Rick
/s/ Christopher P. Yates
/s/ Philip P. Mariani